CLUB HOLDING CO. v. FLINT CITIZENS LOAN & INVESTMENT CO.

1. ASSIGNMENTS—FRAUD—PUBLIC CONTRACTS—SUBCONTRACTORS.
    In suit for accounting between parties to sewage treatment plant construction contract, except municipal corporation, that transferee of subcontractor's assignee remained silent as to its intention to reimburse itself from funds paid such transferee as result of false sworn statement by subcontractor *held*, to create no liability to those whom the subcontractor owed for labor or materials, no reservation having been made by the contractor as to use of funds involved when he made payment thereof to the transferee and latter is not claimed to have participated in securing the false statements.

2. STATUTES—BUILDING CONTRACT FUND—PUBLIC CONTRACTS.

Supreme Court cannot presume, in absence of explicit language, that statute providing that building contract fund paid by owner to contractor or by owner or contractor to subcontractor should be a trust fund for benefit of owners, contractors, laborers, subcontractors and materialmen was intended to apply to erection of public buildings or public works (3 Comp. Laws 1929, §§ 13132–13136; Act No. 259, Pub. Acts 1931).

3. SAME—REPEALS BY IMPLICATION.

Repeals by implication are not favored.

4. SAME—CRIMINAL STATUTE STRICTLY CONSTRUED.

Penal statutes must be strictly construed.

5. TRUSTS — CONSTRUCTIVE TRUST — ASSIGNMENTS — PUBLIC CONTRACTS—FRAUD—SUBCONTRACTORS.

Transferee of subcontractor who furnished labor and materials on sewage treatment plant construction, which received money from contractor and applied part in payment of debt owing itself by subcontractor *held*, not liable to latter's creditors, unpaid materialmen, on theory that constructive trust was imposed on money received by transferee who concealed nothing and was not shown to have been a party to any fraud in obtaining money from the contractor.

6. PRINCIPAL AND SURETY—PUBLIC CONTRACTS—ASSIGNMENTS—FRAUD.

Surety of contractor which erected sewage treatment plant for city, and who is subrogated to his principal's rights *held*, entitled to proceed against subcontractor who fraudulently secured payment of sum on his subcontract to transferee of his assignee but not against such transferee who is not shown to have been a party to the fraud.

7. MUNICIPAL CORPORATIONS—SUBCONTRACTOR'S MATERIALMEN—ASSIGNMENTS—RELEASES.

Remedy of subcontractor's unpaid materialmen upon whose unqualified releases contractor paid transferee of subcontractor's assignee *held*, against subcontractor only, their notice of subcontractor's failure of payment to contractor after latter's reliance upon the releases coming too late.

Appeal from Genesee; Parker (James S.), J. Submitted April 10, 1935. (Docket No. 32, Calendar No. 38,200.) Decided May 17, 1935.

Bill by W. E. Wood Company, a Michigan corporation, United States Fidelity & Guaranty Company, a Maryland corporation, and Thomas W. Wolcott and wife against Flint Citizens Loan & Investment Company, a Michigan corporation, and others for an accounting and other relief. Cross-bill by defendants L. Chapman Steers and wife against plaintiff corporations and River Gravel Company, a copartnership. Cross-bills by defendants Grandsen & Son, Albert J. Cronk, Baxter & Watson, a copartnership, Kenneth Youngs, and Genesee Gravel Company, a Michigan corporation, against River Gravel Company and defendant Flint Citizens Loan & Investment Company. Suggestion filed as to change of name from W. E. Wood Company to Club Holding Company. Bill dismissed. Cross-bills of defendants Baxter & Watson, Genesee Gravel Company and Grandsen & Son dismissed. Decree for defendants Steers and Cronk. Plaintiffs appeal. Defendants Baxter & Watson cross-appeal. Affirmed.

*Cook, Sheppard & Stipes* (*John J. Sloan* and *Thomas W. Payne,* of counsel), for plaintiffs.

*Guy W. Selby* (*Harry G. Gault,* of counsel), for defendant Flint Citizens Loan & Investment Company.

*Neithercut & Neithercut,* for defendants Steers and Cronk.

*Stockton, Cline & George,* for defendants Baxter & Watson and Genesee Gravel Company.

BUSHNELL, J.   The factual background of the situation presented by this appeal may be found in an opinion prepared by Mr. Justice BUTZEL. *People,*

*for use of Youngs,* v. *United States Fidelity &
Guaranty Co.,* 263 Mich. 638. We there held that
River Gravel Company was a subcontractor and
affirmed a judgment obtained by Kenneth Youngs
against United States Fidelity & Guaranty Com-
pany, as surety on the bond of W. E. Wood Com-
pany. The Wood Company subsequently changed
its name to Club Holding Company, but we will
hereinafter refer to this plaintiff as the Wood Com-
pany. Because of the situation discussed in our
former opinion, and prior to the entry of judgment
in that case, plaintiff Wood, its surety, and the
Wolcotts, who had furnished material to defendant
River Gravel Company, hereinafter referred to as
Peterson, sought relief by bill in equity against
defendants by way of an accounting. It is claimed
that any moneys paid by Wood to Peterson and
his assigns are trust funds for the benefit of those
who might be entitled to a claim against Peterson
arising out of the job involved in Wood's contract
with the city of Flint.

During the course of the work, Peterson, who was
furnishing and hauling materials under contract
with Wood, became in need of funds and on March
20, 1931, assigned to First National Bank & Trust
Company at Flint all moneys due and to become due
under the Wood contract. Later the bank declined
to further finance Peterson and an arrangement was
made whereby his indebtedness to the bank was
taken over by defendant Flint Citizens Loan & In-
vestment Company, hereinafter referred to as the
"Investment Company." Wood, who had previ-
ously accepted in writing the assignment by which
it agreed to pay the moneys to the bank, recognized
the transfer of this assignment to the Investment
Company by subsequent acts.

When money became due as referred to in our former opinion, *supra,* Wood required Peterson to furnish sworn statements and releases from his subcontractors and materialmen, etc. Not only did Peterson omit Youngs' name from the statements, but certain other defendants were not listed and the claims of some of the parties who executed releases were never paid because when Wood paid Peterson's September statement in the sum of $23,400.25 by checks in October, 1931, the Investment Company applied $14,867.05 against two notes given it by Peterson, $3,662 against a note on which he was co-maker with another, and disbursed the remainder as directed by Peterson.

Plaintiffs urge, as they did below, that a trust was imposed on these funds, either by reason of Act No. 259, Pub. Acts 1931, or upon the theory of a constructive trust, in that they were obtained by fraud from Wood and may be followed and an accounting had. The trial court declined to adopt either of the trust theories and entered a decree allowing the claims of cross-plaintiffs Steers and Cronk, but only as against Wood and its surety. It also held that neither plaintiffs Wolcott nor cross-plaintiffs Baxter & Watson and Genesee Gravel Company were entitled to recover because of their written releases; that Lennon Gravel Company had made no claim and that Grandsen & Son had submitted insufficient proofs, nor could Wood recover the amount of the Youngs judgment from the Investment Company. All of the plaintiffs and some of the cross-plaintiffs appeal.

The funds involved were paid by Wood without any reservations upon their use or application. No claim is made that the Investment Company had any part in securing the false sworn statement or the

releases, and no one disputes that the moneys pertain to the contract between Wood and the city of Flint. That the Investment Company remained silent as to its intention to reimburse itself before disbursing the balance, does not create a liability as it was entitled to apply the funds as it saw fit. *People, for use of Hirth,* v. *Powers,* 108 Mich. 339, and *Standard Oil Co.* v. *Day,* 161 Minn. 281 (201 N. W. 410, 41 A. L. R. 1291). See, also, 41 A. L. R. 1297 and 48 C. J. p. 647. Appellants claim that the *Hirth Case* and those which follow have lost their authority by reason of the enactment of Act No. 259, Pub. Acts 1931, which became effective September 18, 1931; that since the Investment Company did not acquire the bank's interest until it became the owner of the assignment on September 25, 1931, it took subject to the effect of the statute. The rights of a subsequent assignee are important, but we apprehend that the parties are desirous of a determination of the applicability of the statute of 1931, *supra,* the title to which reads as follows:

"An act to protect the people of the State from imposition and fraud in the building construction industry, and to provide penalties for the violation of this act."

Section 1 of the act provides:

"In the building construction industry, the building contract fund paid by the owner to a contractor, or by the owner or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the owners, contractors, laborers, subcontractors or materialmen, and the said contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes."

Section 2 defines the statutory fraud and provides a penalty, while section 3 states what shall be evidence of intent to defraud. The act affects those matters which are criminal in their character and creates a particular statutory crime. The civil rights and obligations existing between owners, contractors, subcontractors, materialmen and the various trades, etc., seem to be undisturbed by the act.

To hold in the instant case that the Investment Company received such assigned funds in a trust capacity might require a similar application to moneys the subcontractor might pay anyone, including his butcher, baker, or candlestick maker, and such a holding might possibly relieve the principal contractor's surety from the obligations imposed by Act No. 187, Pub. Acts 1905, as amended, being 3 Comp. Laws 1929, §§ 13132-13136, and bonds given pursuant thereto. The act in question stands alone, without any reference to another; it is in harmony with the various provisions of the mechanics' lien law, and we cannot presume, in the absence of explicit language, that it was intended to apply to the erection of public buildings or to public works. To do so might have a nugatory effect on the provisions of the 1905 act as amended, and strike from the books a line of well-understood and established authorities. It is fundamental that the law does not favor repeal by implication and that penal statutes must be strictly construed.

If a trust is not established, in this particular instance, by statute, should a court of equity impose a constructive trust? We think the same reasoning applies with even greater force, as it is doubtful if any fraud existed on the part of the Investment Company, unless created by statute. Upon whom did it

practice the claimed fraud? Nothing was concealed, unless it be an intention to reimburse itself for moneys advanced to or for Peterson, and he does not come here asking any relief. Wood willingly paid the money, induced to do so, not by any fraud of the Investment Company, but by that of Peterson.

No one seriously disputes the subrogation of the surety company to the rights possessed by its principal, Wood, but those rights are necessarily against Peterson and not the Investment Company.

Cross-appellants Baxter & Watson, and Genesee Gravel Company, and appellant Wolcott are bound by their unqualified releases. They did not even take the usual escrow precautions. They may pursue their remedies against Peterson but not as to the Investment Company. Any notification by Peterson's creditors of his failure of payment after Wood had relied upon the releases is too late.

The trial court reached the correct conclusion. The decree is affirmed, with costs to those appellees who have filed briefs in this cause.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred.