NATIONAL BANK OF DETROIT v EAMES & BROWN, INC.

1. STATUTES—BUILDING CONTRACT FUNDS—CREDITORS PRIORITY.

The statute impressing building contract funds with a trust is a penal provision making its violation a felony and its intent is to provide that when funds come into the hands of a contractor the funds shall be properly applied to materialmen and laborers; the statute is not intended to determine priority between conflicting creditors (MCLA 570.151 *et seq.*).

2. LIENS—STATUTES—BUILDING CONTRACT FUNDS—UNIFORM COMMERCIAL CODE—SECURITY INTERESTS—CREDITORS PRIORITY.

A lien created by the statute impressing building contract funds with a trust, if, indeed, the statute creates a lien, would not have priority over perfected security interests because the section of the Uniform Commercial Code which provides that certain liens created by operation of law have priority over perfected security interests specifically refers to a lien upon goods, and any lien created by the statute would necessarily be a lien upon money, which is expressly excluded from the Uniform Commercial Code's definition of goods (MCLA 440.9105[1][f], 440.9310, 570.151 *et seq.*).

3. SECURED TRANSACTIONS—STATUTES—BUILDING CONTRACT FUNDS—UNIFORM COMMERCIAL CODE—CREDITORS PRIORITY.

The statute impressing building contract funds with a trust does not accord to an unsecured creditor claiming protection thereunder a priority over a prior secured creditor under article nine of the Uniform Commercial Code (MCLA 440.9101 *et seq.*, 570.151 *et seq.*).

Appeal from Oakland, Robert L. Templin, J. Submitted Division 2 May 9, 1973, at Lansing. (Docket No. 15373.) Decided November 2, 1973. Leave to appeal granted, 391 Mich 793.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 21 Am Jur 2d, Creditor's Bills §§ 91–93.

Complaint by National Bank of Detroit against
Eames & Brown, Inc., Aetna Life & Casualty
Company, and Westinghouse Electric Corporation
to recover accounts receivable in which plaintiff
claimed a priority as secured creditor. Summary
judgment for plaintiff. Defendants appeal. Af-
firmed.

*Katz, Victor & Yolles,* for plaintiff.

*Dykema, Gosset, Spencer, Goodnow & Trigg* (by
*Robert L. Nelson),* for defendants.

Before: QUINN, P. J., and BRONSON and O'HARA,*
JJ.

BRONSON, J. We are called upon to determine
which creditor has greater rights to a certain fund.
Plaintiff-appellee, National Bank of Detroit (here-
inafter NBD), claims priority as a secured creditor
pursuant to Article Nine of the Uniform Commer-
cial Code.[1] Defendant Westinghouse Electric Corpo-
ration claims priority pursuant to MCLA 570.151
*et seq.;* MSA 26.331 *et seq.*[2] The issue for decision
is:

Whether an unsecured creditor claiming under
MCLA 570.151, which imposes a trust fund for materi-
almen and laborers, takes priority over a prior per-
fected security interest in all present and after-acquired
contract rights, accounts, general intangibles, and chat-
tel paper.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by
assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 440.9101 *et seq.;* MSA 19.9101 *et seq.*

[2] This act is often erroneously referred to as the builders trust fund
act. The act is actually penal in nature as evidenced by the preamble,
which reads:

"AN ACT to protect the people of the state from imposition and
fraud in the building construction industry and to *provide penalties*
for the violation of this act." (Emphasis supplied.)

The record reveals that on August 28, 1970, faulty plumbing, installed by defendant Eames and Brown in a commercial building in Southfield, Michigan, caused water damage to electrical work in the building. This plumbing work was insured by defendant Aetna Life and Casualty Company. Aetna undertook to pay all claims for the water damage and accordingly hired Continental Electric Company to oversee the repairs. Continental had already signed a security agreement covering "present and future accounts, contract rights, chattel paper and general intangibles" with NBD. Continental then hired Westinghouse to supply labor and materials for the repairs. The work was completed and Westinghouse claimed $54,420.26 for labor and materials. Continental had become insolvent in the interim and prior to payment NBD exercised its rights under the security agreement. NBD gave notice to Aetna, Continental, and Westinghouse that payment should be made directly to NBD. Instead, Aetna paid the money directly to Westinghouse and received a hold harmless agreement in return. NBD brought action for this fund and was awarded a judgment on September 20, 1972 pursuant to GCR 1963, 117.2(3). Defendants appeal of right.

Westinghouse claims priority exclusively under the building contract fund act[3] (hereinafter the "Act"). They argue that NBD never had any rights

---

[3] "Sec. 1. In the building construction industry, the building contract fund *paid by* any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds *so paid* to him for building construction purposes.

"Sec. 2. Any contractor or subcontractor engaged in the building construction business, who, with intent to defraud, shall retain or use the proceeds or any part therefor [thereof], of any *payment made* to him, for any other purpose than to first pay laborers, subcontractors

to this money because the insolvent contractor, Continental, never had any interest in the fund. They argue that Continental's only interest was a duty to hold and then pay the fund to its laborers and materialmen, in this case Westinghouse.

NBD's position with regard to the fund is three-fold. NBD first argues that the Act only applies to funds *actually paid* to the contractor. NBD concludes that its interest had attached irrevocably before the contractor had been paid and consequently no rights could ever accrue in favor of Westinghouse under the Act. NBD asserts secondly that Westinghouse has voluntarily advanced unsecured credit to Continental by failure to obtain a mechanic's lien as provided by MCLA 570.1; MSA 26.281. NBD's third argument is similar. NBD correctly asserts that Westinghouse could have partially protected itself by perfecting a security interest of its own using the provisions of Article Nine.[4] Westinghouse would have prevailed (with respect to the materials cost) had they obtained such an interest either by retaining possession[5] or perfecting a purchase money security interest[6] in the materials provided.[7]

---

and materialmen, engaged by him to perform labor or furnish material for the specific improvement, shall be guilty of [a] felony in appropriating such funds to his own use while any amount for which he may be liable or become liable under the terms of his contract for such labor or material remains unpaid, and may be prosecuted upon the complaint of any persons so defrauded, and, upon conviction, shall be punished by a fine of not less than 100 dollars or more than 5,000 dollars and/or not less than 6 months nor more than 3 years imprisonment in a state prison at the discretion of the court.

"Sec. 3. The appropriation by a contractor, or any subcontractor, of any moneys *paid to him* for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment, shall be evidence of intent to defraud." (Emphasis supplied.)

[4] *See generally:* MCLA 440.9102; MSA 19.9102, MCLA 440.9203; MSA 19.9203, and MCLA 440.9204; MSA 19.9204.

[5] *See:* MCLA 440.9305; MSA 19.9305, and White and Summers, Uniform Commercial Code, § 23–10, pp 814–818.

[6] *See:* MCLA 440.9107; MSA 19.9107, defining a purchase money

The arguments of NBD are persuasive. NBD is clearly a secured creditor, having complied with all the requirements of Article Nine.[8] Westinghouse can prevail only if the Act gives it a status superior to the secured position of NBD. The Act does not so provide for three reasons.

First, the Act is a *penal* provision making violation a felony. The Act is not intended to determine priority between conflicting creditors. The Act's intent is to provide that when funds come into the hands of a contractor the funds shall be properly applied. Secondly, NBD's security interest attached and was perfected by filing (which gave Westinghouse constructive notice of the interest) from the instant the contract between Continental and Westinghouse was signed. Thus, any possible priority status claimed by Westinghouse would *a fortiori* have to arise *after* the NBD interest was perfected.[9] Westinghouse could also have requested

security interest. MCLA 440.9303; MSA 19.9303, regarding perfection. MCLA 440.9302(1); MSA 19.9302(1), which requires filing, and MCLA 440.9312(4); MSA 19.9312(4), regarding priority. Westinghouse had 21 days after placing the materials in the hands of Continental in which to file and perfect its security interest. *See:* MCLA 440.9304(5); MSA 19.9304(5), and MCLA 440.9304(6); MSA 19.9304(6).

[7] It should be emphasized that the purchase money security interest available to Westinghouse under Article Nine applies only to the materials and not the labor supplied.

[8] The parties agree that NBD has properly perfected a security interest in all accounts, contract rights, general intangibles and chattel paper. *See:* MCLA 440.9303; MSA 19.9303, MCLA 440.9302(1)(e); MSA 19.9302(1)(e). Westinghouse claims that the fund in question never came within the above categories; however, the contract between Continental and Westinghouse was a "contract right" before performance and an "account" after performance. *See:* MCLA 440.9105(c); MSA 19.9105(c), and MCLA 440.9106; MSA 19.9106.

[9] We are not unaware of the common-law concept raised by Westinghouse that "an assignee cannot have greater rights than his assignor". The parties refer us to Gilmore, *The Assignee of Contract Rights and His Precarious Security,* 74 Yale LJ 217 (1964). Professor Gilmore was considering "[t]he assignment of rights to the payment of money to be earned by performance under contracts which are,

a subordination agreement from NBD.[10] Finally, the Act does not create a lien with Article Nine priority as contemplated by MCLA 440.9310; MSA 19.9310.[11]

Westinghouse, having failed to secure a priority by filing a mechanic's lien or perfecting a security interest, must stand in the position of an unsecured creditor. The building contract fund act, for the reasons given above, accords them no priority over NBD, a prior secured creditor under Article Nine of the Uniform Commercial Code.

Affirmed. Costs to plaintiff.

All concurred.

---

wholly or in part, executory at the time the assignment is made". Gilmore, *supra,* at 221. That is not our case. At the time of the assignment to NBD there was no contract in existence between Continental and Westinghouse.

Westinghouse contracted with Continental with constructive knowledge of NBD's prior security interest. This constructive knowledge resulted from NBD's proper filing of their security interest. The official comment to section 9-103 states the policy consideration (for filing) which is "to allow subsequent creditors [Westinghouse] of the *debtor-assignor* [Continental] to determine the true status of his affairs". (MCLA 440.9103; MSA 19,9103, comment 2.)

The priority rights of Westinghouse must be considered with regard to this knowledge. This knowledge is generally fatal to a later claim which is not based on a superior rule of priority. *See:* MCLA 440.9301(1)(d); MSA 19.9301(1)(d) and Comment, *Contract Rights as Commercial Security: Present and Future Intangibles,* 67 Yale LJ 847 (1958); Coogan, *Intangibles as Collateral Under the Uniform Commercial Code,* 77 Harv L Rev 997 (1964) for pre- and post-code effects of a subsequent creditor's knowledge of an existing assignment.

[10] MCLA 440.1102(3); MSA 19.1102(3), MCLA 440.9201; MSA 19.9201, MCLA 440.9316; MSA 19.9316.

[11] MCLA 440.9102(2); MSA 19.9102(2), MCLA 440.9104(c); MSA 19.9104(c), and MCLA 440.9310; MSA 19.9310 provide that certain liens created by operation of law have priority over perfected security interests. The building contract fund act is not such a lien. This act, if indeed it creates a lien (a question we need not decide), creates a lien on money. MCLA 440.9310, *supra,* specifically refers to "a lien upon goods". The definition of *goods* (MCLA 440.9105 [1] [f]; MSA 19.9105 [1]–[f]) expressly excludes money.