NATIONAL BANK OF DETROIT v EAMES & BROWN, INC

Docket No. 55423. Argued November 8, 1974 (Calendar No. 20).—
Decided June 3, 1976.

In 1966 the National Bank of Detroit acquired and perfected a
security interest under the Uniform Commercial Code in all
present and future accounts receivable of Continental Electric
Company. Aetna Life & Casualty Company, the insurer of
Eames & Brown, Inc., contracted directly with Continental to
repair the electrical work in a building which had been flooded
because of faulty work performed by Eames & Brown. Conti-
nental subcontracted certain repair work and materials to
Westinghouse Electric Corporation. The National Bank of De-
troit notified Aetna and Eames & Brown of its security interest
in Continental's accounts receivable and asked Aetna to pay to
it all monies owed to Continental. Later, Continental became
insolvent and Aetna paid Westinghouse for materials and labor
supplied under the repair contract with Continental. The bank
brought an action against Eames & Brown, Aetna, and West-
inghouse, based on the asserted superiority of its perfected
security interest over the provisions of the builders' trust fund
act (MCLA 570.151; MSA 26.331), to recover the money paid to
Westinghouse. The Oakland Circuit Court, Robert L. Templin,
J., held that the money owed by Aetna to Continental was an
account receivable in which the bank had a valid security
interest, and granted summary judgment for the bank. The
Court of Appeals, Quinn, P. J., and Bronson and O'Hara, JJ.,
affirmed, holding that the bank had a perfected security inter-
est in the money owed by Aetna to Continental and that the
position of the bank under the Uniform Commercial Code was
superior to the position of Westinghouse under the builders'
trust fund act (Docket No. 15373). Defendants appeal Held:

1. The builders' trust fund act is not only penal in nature but
also provides a civil remedy.

2. The purpose of the act is to create a trust fund for the
benefit of materialmen and others under private construction

REFERENCE FOR POINTS IN HEADNOTES
[1–9] 53 Am Jur 2d, Mechanics' Liens § 332.

contracts, in addition to their rights under the mechanics' lien statute. The contractor or subcontractor cannot defeat the purpose of the act by granting a security interest in accounts receivable held in trust for the materialmen's benefit. However, if the money provided by the secured creditor was in fact used to pay laborers, subcontractors, or materialmen on the specific job in question, the purpose of the act has been carried out. To that extent, a secured creditor has a right to the accounts receivable of the contractor. A security interest created by a general, continuing assignment should be regarded as valid at least to the extent that it does not exceed the amount of money lent by the secured party actually used in creating the specific improvement.

3. The burden of proving that the funds provided were in fact used to pay laborers, subcontractors, and materialmen on the project rests on the secured party. To the extent that the lender fails to satisfy this burden of proof, the laborers, subcontractors, and materialmen have the superior right to the fund; if the lender satisfies the burden of proof, its perfected security interest is superior.

4. From the facts before the Court, it cannot determine how much of the money paid to Westinghouse was actually owed to Westinghouse, or whether any or all of the money provided by the National Bank of Detroit was actually used to pay laborers, subcontractors, and materialmen on this project. Those facts must be determined at trial.

Justice Coleman concurred in the result, but would focus on the position of Continental Electric as trustee under the statute rather than on the position of National Bank of Detroit as a secured lender. The security interest of National Bank of Detroit could not attach until Continental obtained rights in the collateral, which would be after the trust obligation had been discharged. The builders' trust fund act does not, however, diminish the rights of creditors who have complied with the Uniform Commercial Code by perfecting a secured interest in the collateral. On remand to the trial court a hearing should be held to determine whether the payment to Westinghouse exceeded the amount due under the trust obligation and whether the security interest attached to the excess.

Reversed and remanded for further proceedings.

50 Mich App 447; 213 NW2d 573 (1973) reversed.

.OPINION OF THE COURT

1. TRUSTS—STATUTES—BUILDING CONTRACTORS—PAYMENT—DAMAGES.

The statute which provides that a building contract fund paid to

a contractor or subcontractor shall be a trust fund for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, is not only penal in nature but also provides an action for civil damages (MCL 570.151–570.153; MSA 26.331–26.333).

2. TRUSTS—STATUTES—BUILDING CONTRACTORS—PAYMENT—THIRD PARTIES—CONSTRUCTIVE PAYMENT.

The statute which provides that money paid to a building contractor or subcontractor shall be a trust fund for the benefit of certain persons applies to money constructively paid to a contractor, even though the money is physically delivered to a third party on his behalf (MCL 570.151–570.153; MSA 26.331–26.333).

3. TRUSTS—STATUTES—CONTRACTORS—PAYMENT.

The purpose of the statute which provides that money paid to a building contractor shall be a trust fund is to create a trust fund for the benefit of materialmen and others under private construction contracts in addition to their rights under the mechanics' lien statute (MCL 570.1 *et seq.,* 570.151–570.153; MSA 26.281 *et seq.,* 26.331–26.333).

4. TRUSTS—STATUTES—BUILDING CONTRACTORS—ACCOUNTS RECEIVABLE—SECURED CREDITORS.

It is entirely consonant with the purpose of the statute which provides that money paid to a building contractor shall be a trust fund for the benefit of certain persons to assign a specific account receivable of a building contractor, arising out of a particular improvement, to a lender to raise money to pay laborers, subcontractors, and materialmen engaged by the contractor to perform labor or furnish material for the specific improvement, because to the extent that the money lent is used to pay laborers, subcontractors, and materialmen on the job in question, the purpose of the statute is carried out; a security interest created by a general continuing assignment should be regarded as valid at least to the extent it does not exceed the amount of money lent by the secured party actually used in creating the specific improvement (MCL 570.151–570.153; MSA 26.331–26.333).

5. TRUSTS—STATUTES—BUILDING CONTRACTORS—SECURED CREDITORS—PRIORITY—BURDEN OF PROOF.

A secured creditor claiming priority in accounts receivable of a

building contractor, by an assignment, over laborers, subcontractors, and materialmen on a specific improvement has the burden of proving that the funds provided were in fact used to pay laborers, subcontractors, and materialmen on that improvement; to the extent the creditor fails to satisfy this burden of proof, the laborers, subcontractors, and materialmen have the superior right under the statute which provides that money paid to a contractor shall be a trust fund for their benefit (MCL 570.151–570.153; MSA 26.331–26.333).

CONCURRING OPINION

COLEMAN, J.

See headnote 1.

6. TRUSTS—STATUTES—CONTRACTORS—PAYMENT.

*The builders' trust fund act does not create ·a lien; it imposes a trust on a contractor for the benefit of the person making payment, contractors, laborers, subcontractors, or materialmen (MCL 570.151; MSA 26.331).*

7. TRUSTS—STATUTES—CONTRACTORS—COMMON LAW REMEDY.

*The beneficiary of a statutory builders' trust fund has a common-law remedy if aggrieved by a contractor's violation of the penal provision of the builders' trust fund act; the remedy is not destroyed by the contractor's bankruptcy because the funds are never the "property" of the contractor within the provisions of the bankruptcy act (MCL 570.152; MSA 26.332).*

8. SECURED TRANSACTIONS—TRUSTS—STATUTES—CONTRACTORS—PAYMENT.

*A secured creditor claiming an interest in accounts receivable of a debtor building contractor under a security agreement did not have any rights under the security agreement in money owed to the debtor for certain construction work until the contractor's statutory trust obligation first to pay subcontractors engaged by it to perform labor or furnish material had been discharged (MCL 440.9204[1], 570.151; MSA 19.9204[1], 26.331).*

9. STATUTES—TRUSTS—CONTRACTORS—UNIFORM COMMERCIAL CODE.

*The builders' trust fund act does not diminish the rights of secured creditors who have complied with the Uniform Commercial Code by·perfecting a secured interest in the collateral (MCL 440.9101 et seq.,) 570.151 et seq.;) MSA 19.9101 et seq.,) 26.331 et seq.).*

*Katz, Victor & Yolles* for plaintiff.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *John K. Cannon, Robert L. Nelson,* and *Michael J. McGuigan)* for defendants.

Amicus Curiae: *Rolland R. O'Hare, Sheldon M. Meizlish,* and *Donald J. Prebenda* for Carpenters District Council of Detroit, Wayne, Oakland and Macomb Counties and Vicinity, United Brotherhood of Carpenters and Joiners of America, AFL-CIO; Cement Masons' Local 514, Operative Plasterers and Cement Masons International Association of the United States and Canada, AFL-CIO; Laborers' Locals 334 and 1076 of the Laborers' International Union of North America, AFL-CIO; Metropolitan Area Executive Committee of the Bricklayers, Masons and Plasterers International Union of America, AFL-CIO; and the Greater Detroit Building and Construction Trades Council.

KAVANAGH, C. J. This case concerns a dispute over certain funds owed to Continental Electric Company (Continental) pursuant to a construction contract existing between Continental and Aetna Life & Casualty Company. Plaintiff National Bank of Detroit (NBD) claims full rights to such funds pursuant to a perfected security interest in the accounts receivable of Continental. MCLA 440.9101 *et seq.;* MSA 19.9101 *et seq.*

Westinghouse Electric Corporation (Westinghouse), a subcontractor and materialman to Continental, claims full rights to such funds pursuant to MCLA 570.151 *et seq.;* MSA 26.331 *et seq.* (the Act). The funds are in the possession of Westinghouse.

Plaintiff brought suit in Oakland County Circuit Court to recover the funds, and was granted sum-

mary judgment. The Court of Appeals affirmed. 50 Mich App 447; 213 NW2d 573 (1973).

We granted leave to consider whether an unsecured creditor claiming under MCLA 570.151, which imposes a trust fund for materialmen and laborers, takes priority over a prior perfected security interest in all present and after-acquired contract rights, accounts, general intangibles, and chattel paper.

I

In 1966 plaintiff-appellee perfected a security interest in all present and future accounts receivable of Continental pursuant to the Uniform Commercial Code (UCC), Article 9. MCLA 440.9101 *et seq.;* MSA 19.9101 *et seq.*

In 1970 the general contracting firm of Darin & Armstrong, Inc., subcontracted the plumbing work in a commercial building in Southfield to defendant-appellant Eames & Brown who was insured by Aetna. The plumbing work was faulty and caused water damage to the electrical work in the building.

Aetna contracted directly with Continental to repair the electrical work. Continental subcontracted some of the repair work and materials to defendant-appellant Westinghouse. Continental became insolvent.

In March, 1971, NBD notified Aetna and Eames & Brown of its security interest in Continental's accounts receivable and requested that they pay directly to NBD all monies owed to Continental.

In May, 1971, Aetna instead paid directly to Westinghouse the sum of $54,420.46, for the material and services provided by Westinghouse to

Continental under the repair contract, and received a hold-harmless agreement.

## II

Westinghouse argues that it is entitled to this fund pursuant to MCLA 570.151 *et seq.;* MSA 26.331 *et seq.* (the Act), which provides:

"Sec. 1. In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

"Sec. 2. Any contractor or subcontractor engaged in the building construction business, who, with intent to defraud, shall retain or use the proceeds or any part therefor, of any payment made to him, for any other purpose than to first pay laborers, subcontractors and materialmen, engaged by him to perform labor or furnish material for the specific improvement, shall be guilty of felony in appropriating such funds to his own use while any amount for which he may be liable or become liable under the terms of his contract for such labor or material remains unpaid, and may be prosecuted upon the complaint of any persons so defrauded, and, upon conviction, shall be punished by a fine of not less than 100 dollars or more than 5,000 dollars and/or not less than 6 months nor more than 3 years imprisonment in a state prison at the discretion of the court.

"Sec. 3. The appropriation by a contractor, or any subcontractor, of any moneys paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment, shall be evidence of intent to defraud."

The Court of Appeals held that NBD had a perfected security interest in the money owed by Aetna to Continental and that the position of NBD under the UCC was superior to the position of Westinghouse under the Act for three reasons:

1) The Act is a penal provision not intended to determine priority between conflicting creditors.

2) NBD's UCC security interest attached and was perfected prior to Westinghouse's right, if any, under the Act.

3) The Act does not create a lien of the type given priority under UCC 9-310; MCLA 440.9310; MSA 19.9310.

Defendants assert that the Court of Appeals is in error because:

1) The Act does provide the basis for a civil remedy. *B F Farnell Co v Monahan,* 377 Mich 552; 141 NW2d 58 (1966), overruling *Club Holding Co v Flint Citizens Loan & Investment Co,* 272 Mich 66; 261 NW 133 (1935).

2) Article 9 of the UCC does not apply because:

a) Under the Act and the UCC the fund held by Aetna was not an account receivable of Continental because Continental had no assignable right in that fund until its laborers and materialmen were paid; and

b) the Act creates an interest by operation of law that is outside of and superior to a security interest in accounts receivable.

NBD supports the opinion of the Court of Appeals and adds that the Act cannot be applied to the money paid to Westinghouse because the Act speaks of money "paid by any person to a contractor" and the $54,000 was never actually paid to Continental, the contractor.

In response, defendants urge that we interpret

the Act to apply to money constructively paid to a contractor, even though physically delivered to a third party on his behalf, because otherwise secured creditors will be able to circumvent the Act by obtaining their money directly from owners. We note at the outset that we agree with defendants in this regard.

Amici Curiae, construction trade unions, in their brief support the position of defendants.

All three briefs present strongly worded policy arguments.

### III

The Act's purpose was discussed in *General Insurance Co of America v Lamar Corp,* 482 F2d 856, 860 (CA 6, 1973):

"The legislative history of the Michigan statute itself is obscure. The briefs of the parties do nothing to illuminate it, and our research has not disclosed the exact circumstances of the statute's enactment. Nevertheless, the date of its passage, 1931, identifies the act as one of a genre of Depression-era measures intended to afford relief to subcontractors and materialmen in the construction industry.

"During the boom period of the 1920's, speculative builders often undertook to construct projects too large for their available capital to finance, and they frequently paid suppliers and materialmen on older projects with funds received as payment on more current operations. With the advent of the crash of 1929 and the consequent widespread insolvency of many building contractors, these pyramided empires also collapsed and many subcontractors and suppliers were never paid. Subcontractors and materialmen on private projects were left only with mechanics' liens as remedies, and these were often ineffective. *See generally* Grossman, Trust and Penal Provisions of the New York State

Mechanics' Lien Law, 5 Brooklyn L Rev 14, 16–22 (1935).

"On the other hand, suppliers of labor and material on public projects were protected by statutorily required payment and performance bonds. These bonds required for public projects were intended 'to afford protection to the suppliers of labor or materials, similar to that afforded under the mechanics' lien laws in the case of private buildings or construction.'

\* \* \*

"When Depression-era experience demonstrated the inadequacy of mechanics' liens in many cases because the owner had a defense if he had paid the principal contractor, statutes like the Michigan Act of 1931 were enacted to afford a 'supplement to the Mechanics' Lien Law,' providing a more effective remedy for private project suppliers against their principal contractors than they had previously." (Footnotes omitted.)

In *Club Holding Co v Flint Citizens' Loan & Investment Co,* 272 Mich 66; 261 NW 133 (1935), this Court held that the Act's trust fund provisions did not apply to the erection of public buildings. The Court also observed that the statute was criminal in nature and seemed to leave undisturbed the civil rights and obligations existing between owners, contractors, subcontractors, materialmen, and laborers.

In *B F Farnell Co v Monahan,* 377 Mich 552; 141 NW2d 58 (1966), we overruled the suggestion in *Club Holding Co* that no right to an action for civil damages was created by the Act. In *B F Farnell Co,* a contractor who was paid for work performed under contract filed for bankruptcy while holding construction fund money and before all the materialmen were paid. The contractor delivered that construction fund money to the trustee in bankruptcy. The contractor was discharged in bankruptcy. A materialman brought an action under

the Act against the contractor alleging that the contractor was a trustee in the funds paid him to the extent of the amount owed for materials.

We held that under the Act the contractor held the money as trustee for his materialmen and that the money was not the contractor's property under § 70 of the Bankruptcy Act (11 USC 110).

"If plaintiff can prove the allegations of its complaint, then 'those funds,' whether turned over to the trustee in bankruptcy or not, were never the 'property' of defendant within said section 70.

*"To conclude:* It is clear that a contractor or subcontractor, by delivering to his trustee in bankruptcy what he himself holds as trustee under the act of 1931, cannot thereby defeat the common-law remedy this Court has provided in favor of those who under the act are aggrieved by his statutory violation. Whether defendant's act of turning the funds over to his trustee did or did not place such funds beyond the reach of plaintiff is beside the point. Plaintiff had the remedy it seeks to pursue, as against the defendant, when the latter retained or used the funds as charged in its complaint. That remedy was not destroyed, either by defendant's voluntary petition in bankruptcy or by his voluntary payment to the trustee in bankruptcy of that which was not his. To the extent *Club Holding* collides with these views, *Club Holding* should be overruled." 377 Mich, pp 557–558.

It is clear that under *Farnell,* the Court of Appeals in the case at bar erred in holding that the Act did not provide a civil remedy.

The rationale of *Farnell* also lends support to defendants' position that Continental did not have an assignable interest in accounts receivable held in trust for the materialmen. The contractor or subcontractor cannot defeat the purpose of the Act by granting a security interest in those funds held in trust for the materialmen's benefit.

We do not believe, however, that such a determination necessarily nullifies a validly perfected security interest in the accounts receivable of a contractor.

The purpose of the Act is to create a trust fund for the benefit of materialmen and others under private construction contracts. This is in addition to the rights granted pursuant to the mechanics' lien statute. MCLA 570.1 *et seq.;* MSA 26.281 *et seq.* They are two separate protections, providing two distinct avenues of relief to the unpaid laborers and materialmen. Any other interpretation would render one of these statutes superfluous.

If the money provided by the secured creditor was in fact used to pay laborers, subcontractors, or materialmen on the specific job in question, the purpose of the Act is carried out. To that extent, there is no reason why the secured creditor should not have a right to the accounts receivable of the contractor.

It is entirely consonant with the purposes of the Act to assign a specific account receivable, arising out of a particular improvement, to a lender to raise money to pay "laborers, subcontractors and materialmen, engaged by [the contractor] to perform labor or furnish material for the specific improvement". MCLA 570.152; MSA 26.332. The burden of proving that any or all of the funds provided were in fact used to pay laborers, subcontractors and materialmen on this project rests on the secured party. To the extent that the lender fails to satisfy this burden of proof, the laborers, subcontractors and materialmen prevail and have the superior right to the fund; if the lender satisfies the burden of proof, its perfected security interest is superior.

In this case the security interest was created by

a general continuing assignment covering all present and future accounts. In such a case the money may be loaned before the account receivable begins to be created. If the lender in this case in fact loaned money which was used to pay for labor and material for the specific improvement here involved in an amount at least as large as the amount of the accounts receivable, there would be no diversion to "any other purpose".

A security interest created by a general, continuing assignment should be regarded as valid at least to the extent it does not exceed the amount of money lent by the secured party actually used in creating the specific improvement.

From the facts before us, we cannot determine how much of the $54,420.46 paid to Westinghouse was actually owed to Westinghouse, or whether any or all of the money provided by NBD was actually used to pay laborers, subcontractors and materialmen on this project. Those facts must be determined at trial.

## IV

We noted above that the parties and *amici* involved in this case presented strong policy arguments favoring their respective positions. These may be summarized by stating that whatever way we rule in this case will apparently spell the doom of the construction industry.

The practice of financing construction projects is different from financing other entrepreneurs for reasons unique to the business. As a general rule, banks place considerably less reliance on the accounts receivable of contractors than on other business ventures.

"The reason is evident—the risk in this field of lending is greater than in any other. Year after year, surveys by Robert Morris Associates show that the contractor is number one on the list of loan losses by industry. The risks are greater because the contractor is susceptible to innumerable adverse forces outside of his control. The greatest risk lies in the fact that, unlike other industries, the contractor sets his price before the product costs are known, and that price, the bid, is generally what he will receive, no matter what his costs are." Rogers, *The Contractor—Analysis From A Credit Standpoint,* J Commercial Bank Lending 19 (Feb, 1975).

There are, of course, other risks encountered by the lender with a security interest in the contractor's accounts receivable, *e.g.,* priorities of other secured parties with superior interests; workmen, and materialmen with liens; suppliers with purchase money security interests where available under the UCC; and bonding companies with rights of subrogation. These situations are not affected by the result in this case. Neither does this result limit the right of the parties to require payment and performance bonds, or to enter into subordination agreements per UCC, 9-316.

The mechanics' lien statute is available to the contractors, subcontractors, laborers and materialmen to protect their interest in the property. MCLA 570.1 *et seq.;* MSA 26.281 *et seq.*

## V

The opinion of the Court of Appeals is reversed, and the case is remanded to Oakland County Circuit Court for further proceedings consistent with this opinion.

Williams, Levin, and Fitzgerald, JJ., concurred with Kavanagh, C. J.

Coleman, J. *(concurring).* The Chief Justice and I reach the same result in this case. We reverse the Court of Appeals and remand for further proceedings. However, I find his opinion does not sufficiently describe the building contract fund act and its relationship to the Uniform Commercial Code. The focus should be on Continental Electric Company's position as trustee under the building contract fund act and not on National Bank of Detroit's position as a lender of funds and holder of a security interest.

This contest is between two parties owed money by Continental Electric Company. National Bank of Detroit had a security interest in Continental's accounts receivable. Westinghouse Electric Corporation had subcontracted work from Continental.

Eames & Brown had installed plumbing in a building. Faulty installation resulted in water damage. The firm's insurer, Aetna Life & Casualty Company, contracted with Continental to repair the damage. Continental subcontracted the work to Westinghouse.

When these agreements were made NBD had a security interest in Continental's present and future accounts. NBD notified each defendant of this interest.

Continental became insolvent. Aetna paid Westinghouse directly for materials and services provided under the subcontract with Continental.

NBD sued for the money paid to Westinghouse claiming the money under its security interest. Westinghouse said the building contract fund act entitled it to the money.

The circuit court said the building contract fund

act did not apply. NBD was then granted summary judgment.

The Court of Appeals affirmed for three reasons. It said the building contract fund act is a penal statute not intended to determine priorities between creditors. Second, Westinghouse's claim arose after NBD perfected its security interest. Third, the act does not create a lien covered by the Uniform Commercial Code.

The Court of Appeals' conclusion about the building contract fund act is in error. *B F Farnell Co v Monahan*, 377 Mich 552; 141 NW2d 58 (1966) overruled *Club Holding Co v Flint Citizen Loan & Investment Co*, 272 Mich 66; 261 NW 133 (1935), which had indicated that the statute was penal.

Correcting the Court of Appeals on the nature of the statute still leaves the problem of resolving the competing statutory interests. When our Uniform Commercial Code (MCLA 440.1101 *et seq.;* MSA 19.1101 *et seq.)* was adopted, the building contract fund act (MCLA 570.151 *et seq.;* MSA 26.331 *et seq.)* was not repealed.

Article 9 of the UCC applies to "any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures" but it "does not apply to statutory liens" with one exception not in issue. MCLA 440.9102. MCLA 440.9104(c) says the "article does not apply * * * to a lien given by a statute or other rule of law for services or materials except as provided in section 9310 on priority of such liens".[1]

---

[1] *See* Note, *Nonconsensual Liens Under Article 9,* 76 Yale LJ 1649 (1967), and Miller, *Liens Created by Operation of Law: A Look at Section 9-310 of the Uniform Commercial Code,* 76 Com LJ 221 (1971). Also see notes *Priorities Between Article Nine Security Interests and Statutory Liens in Iowa,* 23 Drake L Rev 169 (1973), and *Priority Between Security Interests and Liens Arising by Operation of Law in Oregon,* 12 Willamette LJ 173 (1975).

*Bidwell v Whitaker,* 1 Mich 469 (1850), said that a lien "[i]n its largest sense * * * embraces every case in which property is charged with the payment of any debt or duty". In discussing a lien arising by operation of law, the Court in *Aldine Manufacturing Co v Phillips,* 118 Mich 162; 76 NW 371 (1898), said it was analogous to a common law lien defined as "'the right of detention, in persons who have bestowed labor upon an article, or done some act in reference to it, and who have the right of detention till reimbursed for their expenditures and labor'. *Oakes v Moore,* 24 Me 214, 219; 41 Am Dec 379 [1844]." Also see 51 Am Jur 2d 142 and discussions in *McClintic-Marshall Co v Ford Motor Co,* 254 Mich 305; 236 NW 792 (1931) and *Cheff v Haan,* 269 Mich 593; 257 NW 894 (1934).

The building contract fund act does not create a lien.[2] It imposes a trust on a contractor "for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen". MCLA 570.151. The trustee must use "any payment made to him * * * to first pay laborers, subcontractors and materialmen, engaged by him to perform labor or furnish material for the specific improvement". MCLA 570.152. Failure to do so subjects the trustee to criminal penalties.

The beneficiary of the trust also has "the common law remedy this Court has provided in favor of those who under the act are aggrieved by [the contractor's] statutory violation". *Farnell* at p 557. In *Farnell* the contractor-trustee had been paid for work done under a contract and turned the payment over to a trustee in bankruptcy without paying a subcontractor. The Court said the remedy

---

[2] The 1 Restatement, Trusts, 2d, § 9 says a "mortgage or a pledge or a lien is not a trust".

"was not destroyed, either by defendant's voluntary petition in bankruptcy or by his voluntary payment to the trustee in bankruptcy of that which was not his". Earlier the Court noted that the funds "were never the 'property' of defendant within [the provisions of the bankruptcy act]".

MCLA 440.9303(1) says a security interest "is perfected when it has attached and when all of the applicable steps required for perfection have been taken". MCLA 440.9204(1) says a security interest "cannot attach until * * * the debtor has rights in the collateral".

*Farnell* indicates that Continental did not have any rights in the money owed by Aetna until the trust obligation "to first pay * * * subcontractors * * * engaged by [it] to perform labor or furnish material" had been discharged. NBD's security interest does not attach until this is done.

The Chief Justice believes it is "entirely consonant with the purposes of the Act to assign a specific account receivable, arising out of a particular improvement, to a lender to raise money to pay" the subcontractor. I believe the statutes make Continental the trustee of the fund for specified purposes, make Westinghouse the beneficiary, and postpone the attachment of NBD's security interest until the trust is discharged.

The Chief Justice says a "security interest created by a general, continuing assignment should be regarded as valid at least to the extent it does not exceed the amount of money lent by the secured party actually used in creating the specific improvement". Again, I would focus on all the relationships created by the statutes and not just on the secured party/debtor one. NBD's security interest does not attach until Continental has a right to the money. Continental does not have a

right to money until its trust obligation is discharged.

However, the building contract fund act should not be used to diminish the rights of creditors who have followed the UCC. It is possible that the money paid to Westinghouse exceeded that which was due under the building contract fund act. It is possible that if Continental had not been insolvent and NBD had not taken a security interest in the accounts receivable, some of the money paid to Westinghouse would have been retained by Continental. NBD should be given an opportunity to develop the facts and determine if Westinghouse received more than was due under the building contract fund act.

I would reverse the Court of Appeals and remand to the trial court for a hearing to determine whether the payment to Westinghouse exceeded the money due under the building contract fund act. If Westinghouse did receive more than was due, NBD should have an opportunity to demonstrate that its security interest attaches to the excess.

LINDEMER and RYAN, JJ., took no part in the decision of this case.