BISHOP DISTRIBUTING COMPANY v SAFECO TITLE
INSURANCE COMPANY

Docket No. 67615. Submitted July 11, 1983, at Lansing.—Decided
December 5, 1983.

Progressive Design and Build, Limited, was retained as the
general contractor for the Edgewood Glen construction project
in Lansing. Progressive subcontracted with the Bishop Distrib-
uting Company for the purchase of certain floor covering mate-
rials which were to be used in various construction projects,
including Edgewood Glen. Progressive also subcontracted with
Martin Block Corporation and Martin Ready Mix Company,
Inc., for the purchase of masonry materials to be used in the
Edgewood Glen project. Pursuant to its contract, Bishop took a
security interest in Progressive's assets. Martin Block and
Martin Ready Mix were unsecured creditors of Progressive.
Subsequently, Progressive was unable to meet its contractual
obligations and the funds earmarked for the Edgewood Glen
project were released by the bank to Safeco Title Insurance
Company for distribution to Progressive's creditors pursuant to
the builder's trust fund act. Safeco first paid those parties with
perfected mechanics' liens. Safeco paid Martin Block and Mar-
tin Ready Mix approximately 70 percent of the amount owed
by Progressive to Martin but paid less than that percentage to
Bishop. Bishop filed suit in Ingham Circuit Court against
Safeco, Martin Block, and Martin Ready Mix alleging that,
because of its status as a secured creditor, its claim to the
building trust fund was superior to Martin's unsecured claim.
The court, Donald M. Goodwillie, Jr., J., granted summary
judgment for the defendants. The plaintiff appealed. *Held:*

The circuit court's grant of summary judgment should be
affirmed. The building contract fund held by Safeco was never
included in Progressive's assets. Thus, the plaintiff's security

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur 2d, Contractor's Bonds § 6 *et seq.*
[2] 69 Am Jur 2d, Secured Transactions § 345.
Construction and effect of UCC Art 9, dealing with secured transac-
tions, sales of accounts, contract rights, and chattel papers. 30
ALR3d 9.

interest in Progressive's assets was unenforceable against the trust fund. The plaintiff's security interest does not fall into the narrow category of enforceable security interests because Bishop did not loan money which was then used by Progressive to pay for laborers, materialmen, and subcontractors on a particular construction project.

Affirmed.

1. TRUSTS — BUILDERS' TRUST FUND.

The purpose of the builders' trust fund act is to protect laborers, materialmen, and subcontractors under private construction contracts by creating a trust fund for their benefit out of the building contract funds payable to the general contractor for the project who is the trustee of that fund; the general contractor does not have an assignable interest in that fund and the fund is never part of the general contractor's assets subject to a general security interest (MCL 570.151 *et seq.;* MSA 26.331 *et seq.).*

2. TRUSTS — SECURED TRANSACTIONS — BUILDERS' TRUSTS.

A security interest will prevail over an unsecured claim under the builders' trust fund act only where the secured interest is obtained in return for funds actually used to pay laborers, materialmen, and subcontractors on the specific project at issue.

*Varnum, Riddering, Wierengo & Christenson* (by *Thomas C. Clinton* and *Charles M. Denton),* for plaintiff.

*Booth, Patterson, Lee, Karlstrom & Steckling* (by *J. Timothy Patterson* and *Gregory K. Need),* for Safeco.

*MacLean, Seaman, Laing & Guilford* (by *Kathleen Opperwall),* for Martin Block and Martin Ready Mix.

Before: M. J. KELLY, P.J., and R. B. BURNS and R. A. BENSON,* JJ.

M. J. KELLY, P.J. Plaintiff appeals as of right

---

* Circuit judge, sitting on the Court of Appeals by assignment.

from an order denying its motion for summary judgment and granting defendants' motions for summary judgment under GCR 1963, 117.2(3). We affirm.

Progressive Design & Build, Limited, was retained as general contractor for the Edgewood Glen construction project in Lansing, Michigan. On October 1, 1980, Progressive subcontracted with plaintiff for the purchase of certain floor-covering materials which were to be used ·in various construction projects, including Edgewood Glen. Progressive also subcontracted with defendants Martin Block Corporation and Martin Ready Mix Company, Inc. (collectively Martin), for the purchase of masonry materials to be used in the Edgewood Glen project. Pursuant to the contract between plaintiff and Progressive, plaintiff had taken a security interest in Progressive's assets, including "accounts receivable, and monies payable thereon, general intangibles, contract rights and files of debtor * * * now in debtor's possession and hereafter acquired". The trial court assumed for purposes of the motions for summary judgment that plaintiff's security interest had been perfected. It is undisputed that Martin was an unsecured creditor of Progressive.

The developer of the Edgewood Glen project obtained financing from the National Bank of Detroit (NBD). When Progressive was unable to meet its contractual obligations, NBD released the funds earmarked for the Edgewood Glen project to defendant Safeco Title Insurance Company for distribution to Progressive's creditors under the builders' trust fund act, MCL 570.151 *et seq.;* MSA 26.331 *et seq.* As trustee of the funds, Safeco first paid those materialmen, laborers, and subcontractors on the Edgewood Glen project who had per-

fected mechanics' liens against Progressive. Plaintiff does not challenge that distribution.

Safeco then paid Martin a total of $14,350, which was 70% of the amount owed by Progressive to Martin for the masonry materials. Safeco also distributed $8,000 to plaintiff for the floor covering materials supplied by plaintiff for the Edgewood Glen project. While there is some dispute on whether Progressive owed plaintiff $29,592.10 or $20,573.80 for the floor covering materials used on the Edgewood Glen project, it is apparent that, unlike Martin, plaintiff did not receive payment from the builders' trust fund equal to 70% of the amount owed. While we do not understand Safeco's distribution formula, plaintiff has never challenged, as an alternative to its primary argument, the unequal rate of payment in the event that plaintiff and Martin were found to be claimants similarly situated under the builders' trust fund act. We, thus, decline to consider the distribution formula on review.

Upon Safeco's distribution of funds to Martin, plaintiff filed this action in Ingham County Circuit Court alleging that, because of its status as a secured creditor, plaintiff's claim to the building trust fund was superior to Martin's unsecured claim. The trial court disagreed, holding that any rights held by plaintiff against Progressive under the Michigan Uniform Commercial Code, MCL 440.1101 *et seq.;* MSA 19.1101 *et seq.,* were unenforceable against the builders' trust fund. The trial court concluded that Safeco's payment of funds to Martin was proper as a matter of law.

Section 1 of the builders' trust fund act provides:

"In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be

considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes." MCL 570.151; MSA 26.331.

Since both plaintiff and Martin were subcontractors and materialmen on the Edgewood Glen project, both parties assert legitimate claims to the funds held in trust by Safeco.

The sole issue on appeal is whether plaintiff's claim is superior to Martin's claim by virtue of plaintiff's secured interest in Progressive's assets. We agree with the parties and the trial court that the Michigan Supreme Court's decision in *National Bank of Detroit v Eames & Brown, Inc,* 396 Mich 611; 242 NW2d 412 (1976), is dispositive. Our task, then, is to construe *National Bank of Detroit v Eames & Brown* and apply it to the case at bar.

In that case, Continental Electric Company was retained by Aetna Life & Casualty Company as general contractor for an electrical repair job. Aetna was the insurer of Eames & Brown, Inc., which had originally performed the electrical work. Westinghouse subcontracted with Continental. When Continental became insolvent, both Westinghouse and the National Bank of Detroit informed Aetna of their claims to the contract funds. Westinghouse claimed under the builders' trust fund act and NBD claimed under the Uniform Commercial Code, having taken a security interest in all of Continental's present and future accounts receivable. Aetna distributed the funds to Westinghouse under the builders' trust fund act and NBD filed suit.

In deciding whether NBD's security interest was enforceable against the contract fund, the Su-

preme Court first looked to the general purpose of the builders' trust fund act. Citing *General Ins Co of America v Lamar Corp,* 482 F2d 856, 860 (CA 6, 1973), the Supreme Court held that the purpose of the act is to protect laborers, materialmen, and subcontractors under private construction contracts by creating a trust fund for their benefit out of the building contract funds payable to the general contractor for the project. The general contractor is trustee of that fund. 396 Mich 619-621. Accord, *In re Certified Question,* 411 Mich 727, 731; 311 NW2d 731 (1981); *Earl Dubey & Sons, Inc v Macomb Contracting Corp,* 97 Mich App 553, 564; 296 NW2d 582 (1980), *lv den* 410 Mich 897 (1981); *Renshaw v Samuels,* 117 Mich App 649, 661; 324 NW2d 117 (1982). The Supreme Court then held that, because the building contract fund is held by the general contractor in a trustee capacity for the benefit of others, the general contractor does not have an assignable interest in that fund and the fund is, therefore, never part of the general contractor's assets subject to a general security interest. In support of its holding, the Court cited *B F Farnell Co v Monahan,* 377 Mich 552; 141 NW2d 58 (1966), where it was held that a building trust fund does not qualify as the general contractor's property for purposes of distribution under the bankruptcy act. 11 USC 110 *et seq.*

The Supreme Court, however, created an exception to the general rule that UCC security interests are unenforceable against the builders' trust fund:

"If the money provided by the secured creditor was in fact used to pay laborers, subcontractors, or materialmen on the specified job in question, the purpose of the Act is carried out. To that extent, there is no reason

why the secured creditor should not have a right to the accounts receivable of the contractor.

"It is entirely consonant with the purposes of the Act to assign a specific account receivable, arising out of a particular improvement, to a lender to raise money to pay 'laborers, subcontractors and materialmen, engaged by [the contractor] to perform labor or furnish material for the specific improvement'. MCL 570.152; MSA 26.332. The burden of proving that any or all of the funds provided were in fact used to pay laborers, subcontractors and materialmen on this project rests on the secured party. To the extent that the lender fails to satisfy this burden of proof, the laborers, subcontractors and materialmen prevail and have the superior right to the fund; if the lender satisfies the burden of proof, its perfected security interest is superior." 396 Mich 622.

Narrowly read, *National Bank of Detroit v Eames & Brown* thus holds that a security interest will prevail over an unsecured claim under the builders' trust fund act only where the secured interest is obtained in return for funds actually used to pay laborers, materialmen, and subcontractors on the specific project at issue.

Defendants contend and the trial court held that the exception created in *National Bank of Detroit v Eames & Brown* should be limited to this narrow construction. Because plaintiff "loaned" materials and not funds to Progressive, plaintiff's claim to the trust fund held by Safeco is not enforceable. We agree.

Under MCL 570.151; MSA 26.331, the building contract fund held by Safeco was never included in Progressive's assets. Progressive neither owned the fund nor held an assignable interest in it, but, instead, possessed the fund for the benefit of others in a trustee capacity. Thus, plaintiff's security interest in Progressive's assets is unenforceable against the trust fund. Moreover, plaintiff's secu-

rity interest does not fall into the narrow category of enforceable security interests created by the Supreme Court in *National Bank of Detroit v Eames & Brown.* Plaintiff did not loan money which was then used by Progressive to pay for laborers, materialmen, and subcontractors on a particular construction project.

Affirmed.