JAMES L. EDSON ET AL. v. JOSEPH L. HUDSON.

*Vendor and vendee—Fraudulent purchase—Insolvency—Evidence—Good-faith incumbrancer.*

1. Insolvency may always be submitted to a jury, with other facts, to show an intention to defraud in the purchase of goods.

2. While the mere fact of insolvency will not prevent a merchant from purchasing goods on credit with the good-faith intention of paying for them, and, standing alone, is not a badge of fraud, yet, in this case, such fact, coupled with the existence of a large mortgage on the vendee's stock of goods, and its concealment from the vendors, furnished some evidence tending to show fraud in the purchase of the goods from them.

3. The conveyance of chattels as security for an *antecedent* debt will not operate as a *purchase for value* to defeat existing equities, citing *McGraw v. Solomon*, 83 Mich. 442.

So *held*, where a vendor, claiming a right to rescind the sale for fraud on the part of the vendee, brought an action of trover against a mortgagee, whose mortgage was given to secure a *bona fide* pre-existing indebtedness without any knowledge on his part of the alleged fraudulent purchase of the goods, or of any such claim on the part of the vendor, and which mortgage extended the time for payment of the debt for thirty days, but the mortgagee took almost immediate possession under the insecurity clause, and commenced selling the goods.

Error to Wayne. (Lane, J., presiding.) Argued November 11, 1890. Decided December 5, 1890.

Trover. Plaintiffs bring error. Reversed. The facts are stated in the opinion.

*Dickinson, Thurber & Stevenson,* for appellants.

*Cutcheon, Stellwagen & Fleming,* for defendant, contended: .

1. Plaintiffs seek to rescind the sale on the ground of fraud, which must be clearly proved, and the inferences to be drawn from the facts must not only be consistent with the fraudulent acts charged, but inconsistent with the theory of honesty and good faith in the transaction; citing *Blish v. Collins,* 68 Mich. 542; *Campau v. Lafferty,* 50 Id. 114.

2. The Lull mortgage (not being filed) was absolutely void as against creditors; citing *Crippen v. Jacobson,* 56 Mich. 387; and therefore it in no way injured plaintiffs, and gives them no right of action, because there can be no fraud without damage; citing *Smith v. Rumsey,* 33 Mich. 183, 193.

3. Defendant's mortgage was given to secure a *bona fide* debt, and the mortgagor had a perfect right to give such a mortgage, or even to sell defendant his entire stock of goods to pay such a debt; citing *Whitfield v. Stiles,* 57 Mich. 410, 412; and defendant ratified the mortgage as soon as informed of its execution, thus making it take effect, for the purposes of this case, from the date of its filing; citing *Field v. Fisher,* 65 Mich. 606.

*H. C. Wisner,* for defendant.

MORSE, J. This is an action of trover to recover the value of certain goods sold by the plaintiffs to one William H. Smith, while he was engaged in business at Big Rapids, Mich. Mr. Smith was a customer of plaintiffs. At the time this suit was brought, he owed them the following bills sold at the dates given below:

| | |
|---|---|
| June 26, 1888 | $2 90 |
| June 26, 1888 | 70 05 |
| July 5, 1888 | 4 13 |
| August 21, 1888 | 279 38 |
| September 8, 1888 | 534 37 |
| Total | $890 83 |

Mr. Smith made no representations as to his financial

standing or responsibility when he purchased any of these goods. He simply ordered them, and they were forwarded to him without question.

On December 17, 1888, Smith put upon record in the city clerk's office at Big Rapids two chattel mortgages, one to A. A. Lull, of Pontiac, Mich., for $7,029.32, dated February 1, 1888, and one to the defendant, Joseph L. Hudson, for $3,060, dated December 15, 1888. These mortgages covered the entire stock of goods, fixtures, and furniture in Smith's store, and the Hudson mortgage was made second to the Lull mortgage. Hudson took possession of the store soon after the filing of his mortgage. It seems that L. G. Palmer, as attorney for Lull, took possession at first about December 19, 1888, and Hudson also, as he says, "was in secondary to Lull." Afterwards, it was concluded that Lull's mortgage was not good as to creditors who had sold goods to Smith between the date of its execution, February 1, 1888, and its filing, December 17, 1888, and thereupon Smith, on December 24, 1888, executed a new mortgage to Lull in the sum of $7,000, making the same subject to Hudson's mortgage This gave Hudson the first mortgage, but defendant testifies that Lull handed him the last Lull mortgage, "with a request that I would take it to Big Rapids and sell the stock under it, and I did so." Hudson sold all the mortgaged property, and realized therefrom the sum of $7,409.41 over all expenses, After deducting his claim, he offered the balance to Lull, who refused to receive it, and it still remains in defendant's hands.

On December 20, 1888, a traveling salesman in the employ of plaintiffs went into Smith's store at Big Rapids, then in the possession of the defendant under the first arrangement with Lull, and picked out, by the private cost and selling mark, a certain amount of goods, which he claimed were part of the identical goods sold by plaint-

iffs to Smith under the bills heretofore mentioned. The value of the goods so identified and picked out was $453.-75. These goods were demanded of defendant, but he refused to deliver them over to plaintiffs. This suit is brought for the value of these goods.

The plaintiffs testified that they would not have sold the goods to Smith if they had known of this first $7,000 mortgage to Lull, which was in existence but not on file when they delivered the goods to Smith. No claim of any fraud on the part of Smith in purchasing these goods was made at first, but, on discovery of the date of the first mortgage to Lull, plaintiffs then insisted that they had a right to a return of the goods, and to rescind the sale, because they were purchased by Smith with a fraudulent intent. No fraud is charged against Hudson. It is admitted that his mortgage was for a *bona fide* debt. But testimony was given tending to show that Smith was insolvent at the time he purchased the goods of plaintiffs; and it is contended that this insolvency, coupled with the fact that he concealed from plaintiffs the fact that his stock was incumbered with a mortgage to Lull for $7,000, was sufficient to void the sale of the goods by plaintiffs to him on the ground of fraud in the purchase of them. And it is further contended that Hudson could not defend against plaintiffs' claim, as he could not be considered in law a *bona fide* holder or purchaser of the goods, for the reason that his mortgage was voluntarily given him by Smith, in payment of an antecedent debt, without any new consideration entering into the same. The circuit judge directed, at the close of the testimony, a verdict for the defendant, but for what reason the record fails to show.

The counsel for defendant contend that the mortgage to Lull cuts no figure in the case upon the question of

fraud, because it was absolutely void as against the plaintiffs; that the mortgage could in no way injure them, and "gives them no right of action, because there can be no fraud without damage." But it must be remembered that plaintiffs testify, and undoubtedly truthfully, that they would not have sold the goods to Smith had they known that this mortgage of over $7,000 had been given. Withholding this mortgage from record, and keeping its existence a secret, on the part of Lull, was, as against the plaintiffs, a fraud upon them, and is so recognized in the law. It was at least the moral duty of Smith to acquaint plaintiffs with the existence of this mortgage at the time of his purchases from them; and we think that his silence in regard to it—his concealment of it—was legally an important circumstance to go to the jury, under all the facts shown, bearing on the question whether or not he purchased the goods with an intent not to pay for them.

The testimony tends strongly to show that he was insolvent when he bought the goods, and that he knew his liabilities largely exceeded his assets. While the mere fact of insolvency does not prevent a man buying goods on credit with the good-faith intention of paying for them, and, standing alone, is not a badge of fraud, yet, in this case, the fact of insolvency, coupled with the existence of this large mortgage, and its concealment from plaintiffs, furnished, in our opinion, some evidence tending to show fraud in the purchase of the goods from them; and insolvency may always be submitted to a jury, with other facts, to show an intention to defraud in the purchase of goods.

A letter from Smith to Hudson of date December 5, 1888, in which he sends a list showing how much less his sales were for the eight preceding months of 1888 than in the same months of the year before, and in which he

says, "I am almost discouraged," also has some bearing upon this question of fraud. He further says in the same letter that "if I am crowded, will give you and Lull chattel mortgages to secure you."

If the question of fraud in the purchase of the goods should have been submitted to the jury, as we think it should, the only remaining question is whether, if such fraud were found, the defendant would be liable in this action. Plaintiffs' counsel claim that the circuit judge gave as a reason for directing the verdict for defendant that the mortgage from Smith to Hudson extended the time for the payment of the debt 30 days, and thus, the same being accepted and taken by Hudson as security for the payment of a *bona fide* debt, a new consideration was furnished, sufficient to defeat the plaintiffs' right of recovery, even if fraud was found in the purchase of the goods by Smith. The counsel contend that this reason is not a good one, because the mortgage was voluntarily made by Smith, and put on record by him, before Hudson had any notice or knew anything about it, and the extension of time in it cut no figure whatever in the transaction. Defendant's counsel claim that the mortgage from Smith to Hudson was taken by the latter as security for the payment of a *bona fide* debt, which mortgage the debtor had a perfect legal right to give. There is no doubt of this proposition in regard to such property as belonged to Smith. And a purchaser in good faith and for value, without knowledge of plaintiffs' claim to these goods, would hold them, as the sale to Smith was not void but voidable on account of the fraud, if any fraud there was, in the purchase of them. And until the plaintiffs rescinded the contract on the ground of such fraud, the title would be in Smith, who might dispose of them to innocent purchasers.

The question here is whether the defendant, at the time the demand was made upon him, stood in the attitude of a good-faith purchaser. It must be conceded from this record that Smith was honestly indebted to defendant for the amount of the mortgage given him; that part of such indebtedness was past due; that the payment of such indebtedness was extended in the mortgage 30 days; and that Hudson had no knowledge whatever of any fraud practiced or any claim that fraud had been practiced in the dealings of Smith with the plaintiffs. But the extension of time can hardly be said to cut any figure in the case, as the defendant took almost immediate possession of the goods under his mortgage, which he was authorized to do, if he felt that he was insecure, by the terms of the same, and commenced selling the goods under such mortgage. In reality there was no extension of time as to the indebtedness.

It must be held under our previous decisions that Hudson was not a good-faith purchaser under his mortgage. It was given to secure a pre-existing indebtedness. It is well settled that the conveyance of chattels or lands as security for an antecedent debt will not operate as a purchase for value to defeat existing equities. See *McGraw v. Solomon, ante,* 442, and cases there cited.

It follows that the judgment must be reversed, and a new trial granted, with costs.

The other Justices concurred.