THE WHITAKER IRON COMPANY v. THE PRESTON NATIONAL BANK OF DETROIT.

*Sale—Fraud—Rescission—Bona fide purchaser—Evidence.*

1. Where fraud is shown in the purchase of property, one who claims to be a good-faith purchaser has the burden of showing this fact.

2. A corporation made a statement of its financial standing as a

basis for credit, in which it valued its accounts receivable and personal property at over $46,000. The vendor sued in trover for the goods, and the testimony tended to show that among the accounts receivable was an item of $2,000; that no such indebtedness existed, but that the alleged debtor had certain goods in his possession belonging to the vendee, which were afterwards sold for $300, and that this was the sole basis for the $2,000 item. The testimony further tended to show that there was included in the list of personal property an item of $5,000 for a patent, and that the same had been purchased some years before for $2,000, or thereabouts. And it is held that, while these items may have been open to explanation, yet the Court are not prepared to say that the testimony did not have some tendency to show that the statement was inaccurate, and that it did not justify the jury in so finding.

3. It appeared that the vendee had been in the habit of paying two of its directors $500 a year each as compensation for indorsing and guaranteeing its notes given to a bank to which it claimed to have sold the goods, and which was sued for their value, and to other banks, and the defendant requested an instruction that this fact should not be taken as evidence of bad faith in the transaction in controversy; which instruction was given, with the added statement that the jury had a right to consider, with all of the other evidence in the case, these circumstances, in determining whether or not the debt was fraudulently contracted with intent not to pay for the goods. And it is held that this modification of the request is not open to criticism.

Error to Wayne. (Gartner, J.) Argued April 26 and 27, 1894. Decided June 16, 1894.

Trover. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Julian G. Dickinson,* for appellant.

*Alfred Lucking,* for plaintiff.

MONTGOMERY, J. The plaintiff is a manufacturer of sheet iron. During the year 1890 it furnished to the Detroit Elbow Company goods to a considerable amount, including those in question in this suit. The elbow company, in December, 1890, sold the goods in question to

the defendant, and the agreed price was indorsed as payment upon certain notes held by the bank and given by the elbow company. The bank held the guaranty of one of the directors of the elbow company, J. D. Standish, which it was claimed by defendant was released by operation of law upon accepting the goods in question as part payment. The plaintiff, claiming that the goods in question were bought by the elbow company with intent not to pay for them, and that the credit was extended in reliance upon certain false representations made by the officers of the company relating to its financial standing, made demand upon the bank for the goods, and, on refusal of the bank to deliver, brought this action in trover.

The case presented two issues of fact for the determination of the jury: *First*, was there fraud in the purchase of the goods by the elbow company? And, *second*, was the bank a *bona fide* purchaser for value? The plaintiff recovered a verdict, and the defendant appeals.

1. It is earnestly contended that there was no evidence tending to show fraud in the purchase of the goods by the elbow company, and that a verdict should have been directed for the defendant on this ground. We have carefully examined the testimony, and are not prepared to say that there was a total lack of evidence upon this branch of the case. The manager of the elbow company, Mr. Stoddard, was made a witness for the plaintiff, and denied any fraudulent purpose; but we think there was enough testimony to raise the question of the accuracy of the statement made by the company as a basis for credit. By this statement it was represented that there were accounts receivable amounting to $6,244.69, and personal property amounting to $39,779.34. There was testimony which tended to show that included in the accounts receivable was an item of $2,000 against McDonald & Co., of Toronto, and also that there was no such indebtedness, but that Mc-

Donald & Co. had certain goods in their possession belonging to the company, which were afterwards sold for $300, and that this was the sole basis for the item of the $2,000 account.    There was also an item in the personal property for $5,000 for a patent, which the evidence tended to show was purchased some years before for $2,000, or thereabouts. While these items may have been open to explanation, yet we are not prepared to say that the testimony did not have some tendency to show that the statement was inaccurate, and did not justify the jury in so finding.

2. The circuit judge charged the jury as follows:

"It will be for you to say as to whether the Preston National Bank—the corporation itself—parted with something valuable in itself, and as to whether it did not have notice of the fraud."

In another portion of the charge the circuit judge stated to the jury, in substance, that if the property was turned over in payment of a pre-existing indebtedness, this would not, under the law, constitute the defendant a *bona fide* purchaser.    There was no specific instruction as to the effect of the discharge of the guarantor, and it is alleged that this instruction did not cover the law of the case. There was no evidence of a discharge of the guarantor except as he would be discharged by operation of law on payment of a portion of the debt.    It is unnecessary to determine whether, under these circumstances, these instructions were not sufficiently full, for, in the view we take of the case, there was nothing upon which to base the submission of the question of the good-faith purchase of the defendant to the jury.    The defendant offered no testimony whatever to show that it was a good-faith purchaser.    When the witness Stoddard was on the stand he gave the following testimony:

"*Q.* Do you remember its being talked over that it would be a good idea to sell it outright to the bank, and

let them remove it, for fear of somebody attempting to replevy it?

"*A*. I don't remember.

"*Q*. Was there not something of that kind said?

"*A*. There was some reason given for moving it.

"*Q*. Was not that the identical reason?

"*A*. I really could not tell.

"*Q*. That is, your recollection is faulty as to what was said about that.

"*A*. Yes, I know there was some reason given for moving it; but just what the reason was I could not state."

This testimony is cited, not as showing affirmatively that the bank did have notice of the infirmity of the elbow company's title, but to show that Stoddard, the only witness called who could have had any knowledge upon the subject, was unable to say that it did not, and was unable to say that the only reason for removing these goods was not to prevent their being replevied. If, then, the burden of proof rested upon the bank to show its good-faith purchase, there certainly was no error to the prejudice of the defendant in the instructions which the court gave. We think the rule is that, where fraud is shown in the purchase of property, one who claims to be a good-faith purchaser has the burden of showing this fact. See *Letson v. Reed,* 45 Mich. 27; *Berry v. Whitney,* 40 Id. 65; *Carrier v. Cameron,* 31 Id. 379; 2 Schouler, Pers. Prop. § 609; *Devoe v. Brandt,* 53 N. Y. 462; *Lynch v. Beecher,* 38 Conn. 490.

3. It appeared that the elbow company had been in the habit of paying to two of its directors—Mr. Standish and Mr. Hayes—$500 a year each as compensation for indorsing and guaranteeing the notes given to the Preston National Bank and other banks. The defendant requested the instruction that this fact should not be taken as evidence of bad faith in the transaction in controversy. The circuit judge gave the instruction, but added that the jury had a right to take into consideration, with all the other

evidence in the case, these circumstances, in determining the question which had been submitted, viz., whether the debt was fraudulently-contracted with intent not to pay for the goods. We do not think this modification of the request is open to just criticism. It was certainly competent for the jury to take into account, in determining the question whether the goods were purchased with intent not to pay for them, the knowledge which the manager, Stoddard, had of. the situation of the company and its. ability to meet its obligations.

We have examined the charge with care. We think the instructions fairly submitted the questions of fact to the jury, and, while the case, upon the proof, is not a strong one, we feel constrained to hold that there was sufficient evidence tending to sustain the plaintiff's claims to require the submission of the case to the jury. If a wrong conclusion upon the facts has been reached, we are not, in this proceeding, able to apply the remedy.

The judgment will be affirmed, with costs.

The other Justices concurred.