DURRELL v. RICHARDSON.

1. REPLEVIN—SUFFICIENCY OF WRIT—DESCRIPTION OF PROPERTY.
   The description in a writ of replevin of the goods as a quantity of hosiery, underwear, dry goods, and notions, of a specified value, shipped by the plaintiff, and now contained in a designated store occupied by a named defendant, is sufficient.

2. SAME—TRIAL ON MERITS—WAIVER OF IRREGULARITY.
   An imperfection ·in the form of a writ of replevin, in directing that the property replevied be delivered to the plaintiff's agent instead of to the plaintiff, is waived by the defendant's joining issue in the case and proceeding to trial upon the merits.

3. SAME—GOODS FRAUDULENTLY PURCHASED—MORTGAGES—BONA FIDE LOAN—EVIDENCE.
   In replevin for goods fraudulently purchased, brought by the seller against the buyer and the buyer's brothers-in-law, who claimed as subsequent mortgagees, there was evidence that an earlier mortgage was made to the brothers-in-law, and was withheld from filing; that they were familiar with the mortgagor's affairs, and knew, when they took their mortgage, that large purchases had been made on credit, and that their mortgage would give them priority over the seller; that the alleged loan for which the mortgage was given amounted to $12,000, and, if made, was advanced in cash taken from the private safe of the mortgagees, who were engaged in the milk business on a moderate scale; and that, in an earlier proceeding, the testimony of the parties as to the source of the funds loaned was different from that offered by them

in the replevin suit. *Held*, to warrant the court in submitting to the jury the question whether there was in fact any *bona fide* loan.

4. SAME—MORTGAGEE'S PARTICIPATION IN FRAUD.

On an issue as to whether the mortgagees of certain goods participated in the fraud of the mortgagor in buying them on credit with the intention of never paying for them, the fact that the mortgage was withheld from record for 20 days, while the mortgagor was engaged in business and buying goods, and that, instead of filing the same, a new mortgage was taken of a later date, may be considered, especially where the mortgagees were advised, when the first mortgage was given, that the failure to file it would entitle intervening creditors to priority.

5. SAME—BURDEN OF PROOF.

In replevin for goods fraudulently purchased, one claiming under a subsequent mortgage from the vendee has the burden of showing his own good faith.

Error to Wayne; Frazer, J.   Submitted February 9, 1899.   Decided March 23, 1899.

Replevin by Oliver H. Durrell and others, copartners as Brown, Durrell & Co., against Henry W. Richardson, Thomas E. Hall, William B. Hall, and Emma H. Hall. From a judgment for plaintiffs, defendants Hall bring error.   Affirmed.

*Julian G. Dickinson*, for appellants

*Elliott G. Stevenson*, for appellees.

MONTGOMERY, J.   This is an action of replevin to recover a quantity of dry goods and notions sold by plaintiffs to defendant Richardson, the plaintiffs claiming that the goods were obtained by Richardson by means of false and fraudulent representations relating to his financial ability, and without any intent on his part to pay for them. The defendants Hall Bros. hold a chattel mortgage of $12,-000, and the defendant Emma H. Hall, one of $2,000, each covering the entire stock of Richardson, of which the goods in question were but a portion.

The record shows that the defendant William B. Hall made a motion to dismiss the proceeding on the ground that the writ was not in the form required by statute, because the writ contained no sufficient description of the goods, and because the writ commanded the officer to deliver the goods to Joseph A. Burns, agent for the plaintiffs, instead of to the plaintiffs. The description of the goods was "a quantity of hosiery, underwear, dry goods, and notions, of the value of $4,700, shipped by Brown, Durrell & Co., and now contained in store number 90 Woodward avenue, and now occupied by Henry W. Richardson, one of the defendants herein." We think this description is sufficient, under repeated rulings of this court. *Sexton* v. *McDowd*, 38 Mich. 148; *Farwell* v. *Fox*, 18 Mich. 166; *Burt* v. *Addison*, 74 Mich. 730; *Peterson* v. *Fowler*, 76 Mich. 258; *Simmons* v. *Robinson*, 101 Mich. 240; *Dillon* v. *Howe*, 98 Mich. 168, and note.

The imperfection in the form of the writ, in directing that the property replevied be delivered to the plaintiffs' agent, might have been remedied by amendment, and was waived by defendants when they joined issue in the case and proceeded to trial on the merits. *Manhard* v. *Schott*, 37 Mich. 234; *Austin* v. *Burroughs*, 62 Mich. 181; *Stevens* v. *Harris*, 99 Mich. 230; *Clark* v. *Dunlap*, 50 Mich. 492; *Dailey* v. *Kennedy*, 64 Mich. 208. The case of *Warren* v. *Crane*, 50 Mich. 300, cited by defendants' counsel, was distinguished in *Dailey* v. *Kennedy* by Mr. Justice Champlin, and its doctrine limited to cases in which the party is deprived of his liberty.

It is next contended that the evidence given on behalf of the defendants conclusively shows that the defendants Hall were good-faith incumbrancers, and as such entitled to a verdict. This contention has made it necessary to consider the entire evidence, all of which appears in the record, and it will be necessary to refer more at length to the facts in this opinion.

It appears that the defendant Richardson came to De-

troit in the summer of 1896, and engaged in the dry-goods business at No. 90 Woodward avenue. After a brief but eventful career, he failed for a sum which no creditor complains of as too small. When his failure occurred, the Halls were found to have chattel mortgages, executed on September 23d, aggregating $14,000, *i. e.*, $2,000 to Emma H. Hall, and $12,000 to Hall Bros. On the trial the defendants offered testimony to the effect that Richardson, who is a son-in-law of Mrs. Emma H. Hall, and a brother-in-law to the two Hall brothers, was formerly engaged in the wholesale liquor business in Louisville, Ky.; that in the spring of 1896 he sold out his business, receiving, as the Halls supposed, some $10,000; that in August, 1896, Mrs. Hall and Hall Bros. each received a letter from Richardson, stating that he had a stock of $20,000 to $25,000, and asking a loan, and offering a mortgage on the stock. The purpose of the loan was stated to be to enable him (Richardson) to buy a stock known as the "Winans Stock," which he expected to be sold cheap. The Halls offered testimony tending to show that they loaned Richardson, on September 2d, $12,000 in cash, and Mrs. Hall that she loaned him $2,000 in cash. Hall Bros. testify that the $12,000 paid to Richardson was made up of $11,600 which they had, and had for some time kept, in their safe, and $400 drawn from the bank on their check. Mrs. Hall testified that she had the $2,000 in money in her house. Hall Bros. were engaged in running a milk depot and selling milk from the wagon. They explain the fact of having so much money on hand by stating that they had fear of the banks in Louisville. It is contended by plaintiffs' counsel that the story is inherently improbable. It is unusual, to say the least, for business men to carry the amount of currency stated, and it is also unusual to loan in currency such large sums of money; but we need not determine whether this improbability is such that the jury might be justified in disbelieving it if wholly uncontradicted, but, in view of the fact that the testimony shows that an earlier mortgage was

made, which was withheld from filing, and of the close relationship of the parties, of the probable familiarity of the Halls with the affairs of Richardson, of the fact that they knew his stock was purchased on credit and that the giving of the mortgage would give them priority over those who had sold him the goods so recently, and especially in view of the fact that there was testimony that one of the Halls and Richardson had in another proceeding testified that the amount of the consideration for the mortgages was paid over by the Halls to Richardson by a draft, we think the court was justified in submitting the question whether there was any *bona fide* loan, or any loan at all, made to Richardson.

It is contended that no representations were shown to have been made to plaintiffs upon which they were entitled to rely. The plaintiffs' credit man testified that Richardson stated to him that he had $18,000 in cash, and that he intended to discount his bills. There was ample ground for the jury to find this statement untrue.

The defendants asked an instruction that the failure to record the first mortgage was no badge of fraud. The court did charge as follows:

"I am asked to charge you as to the keeping of this mortgage off record. The simple fact that this mortgage was not on record would not be, of itself, of any benefit to the plaintiffs in this suit, only as it might tend to show the actual intention of the parties, and give you some light as to whether there was any fraud in this case. The mortgagee had a right to keep the mortgage off record if he pleased, and it did not affect his legal rights, providing there was no fraud in the transaction; but the object of introducing that testimony is for the purpose of giving you an opportunity of knowing the entire situation,—to give you an opportunity to judge whether there was not fraud in this transaction on the part of the mortgagees. Fraud, like any other question, must be proved. It cannot be inferred from absolute testimony, but that is what amounts to proof. Inferences may be drawn from any testimony that necessarily follow from the giving of the testimony, but nevertheless fraud must be proven, as any

other fact must be proven in any case, and it must be proven by a preponderance of evidence. Plaintiffs set out that these goods were obtained fraudulently, and that the mortgagees participated in the fraud; that they were parties to it. That, gentlemen of the jury, must be established by the plaintiffs by a preponderance of evidence, in this case as in all others; that is, the evidence must be evidence that satisfies your judgment, drawn from the testimony given in this case, whatever conclusions you may draw from the testimony, that satisfies you, if they satisfy you by a preponderance of testimony over and above the testimony of defendants that there was fraud in this case, and then you are at liberty to act upon it, and not otherwise."

This instruction was sufficiently favorable to the defendants. The fact that the mortgages were withheld from record for some 20 days, while Richardson was engaged in business, and might be presumed to be buying goods, and, instead of filing the same, a new mortgage was taken of a later date, is of some significance, and bears on the question of whether there was a conspiracy between the Halls and Richardson, and is given added force by the fact that the Halls had been advised, when the first mortgage was given, that the failure to file the mortgage would entitle intervening creditors to priority. The instruction as to the burden of proof was too favorable to defendants. *Whitaker Iron Co.* v. *Preston Nat. Bank of Detroit*, 101 Mich. 146; *Cappon & Bertsch Leather Co.* v. *Preston Nat. Bank of Detroit*, 114 Mich. 263.

We think no error was committed to the prejudice of the defendants.

Judgment is affirmed.

The other Justices concurred.