411 Mich. 727 (1981)
311 N.W.2d 731
In re CERTIFIED QUESTION (AIR PRODUCTS & CHEMICALS, INC v J F CAVANAUGH CO, INC)
Docket No. 66824.
Supreme Court of Michigan.
Decided November 2, 1981.
Dykema, Gossett, Spencer, Goodnow & Trigg (by Richard J. McClear and Paul Owen Ashba) for plaintiff.
Bujold & Bailey, P.C. (by Frank J. Bujold, George B. Bailey, Jr., and Douglas A. Tull), for defendant J.F. Cavanaugh Co., Inc.
PER CURIAM:
Pursuant to GCR 1963, 797 the United States District Court for the Eastern District of Michigan has certified the following question to us:
"Whether the building contract fund act, 1931 PA 259, as amended; MCL 570.151 et seq.; MSA 26.331 et seq., applies to public construction projects."
We answer the question in the negative.
I
This case comes to us with the following statement of facts as certified by the United States District Court:
*729 "On October 16, 1976, defendant J.F. Cavanaugh Co., Inc. (`Cavanaugh'), entered into a written contract with the City of Detroit, designated as contract PC-288A, for the construction of a 400 ton per day oxygen plant for a price of $10,448,000. Cavanaugh supplied a payment bond in that amount issued by the defendant The Travelers Indemnity Company (`Travelers'), as surety.
"On November 30, 1976, defendant Cavanaugh entered into a written contract with plaintiff Air Products and Chemicals, Inc. (`Air Products'), under the terms of which Air Products agreed to furnish to Cavanaugh certain design and engineering services, material, and equipment in the prosecution and performance of the work under the contract between Cavanaugh and the city. Cavanaugh was to pay Air Products $7,400,000 for such work subject to certain adjustments.
"Under the terms of the contract between Air Products and Cavanaugh, Air Products was required to submit to Cavanaugh on the 25th day of each calendar month invoices for items of work completed during that month. Cavanaugh was then obligated to add no more than 5% to the Air Products price and to promptly submit its invoices to the city for Air Products items of work. Upon receipt by Cavanaugh of payment from the city for work performed by Air Products, Cavanaugh was to pay Air Products within two working days, net of the city's retainage. Cavanaugh did not elect to add the 5% markup on invoices submitted to the city.
"Construction of the oxygen plant under contract PC-288A has been substantially completed. To date, Cavanaugh has been paid approximately $10,322,000 by the City of Detroit. Cavanaugh has paid Air Products approximately $6,500,000 upon their agreement. Cavanaugh has received but not paid to Air Products approximately $805,000 from the city for work performed by Air Products.
"Air Products filed its action on June 10, 1980 against Cavanaugh and its surety, Travelers, in this court alleging, among other matters, existence of a trust fund under the building contract fund act, 1931 PA 259, as amended; MCL 570.151 et seq.; MSA 26.331 et seq.
*730 "Cavanaugh and Travelers as part of their answer to the complaint denied that the act applied to public projects. Cavanaugh filed a counterclaim alleging breach of the agreement, seeking damages from Air Products in excess of $900,000.
"In October, 1980 Air Products brought a motion for summary judgment upon count I (breach of contract) and count V (building contract fund act) of its complaint.
"On December 24, 1980, the court granted Air Products' motion for partial summary judgment on count V (building contract fund act) and held that Air Products was entitled to immediate possession of trust funds in the amount of $805,108.60. Cavanaugh was further ordered to disburse those funds and to account for any other funds received from the city in payment for work done by Air Products. A copy of the court's memorandum opinion and order, dated December 24, 1980, is attached hereto as exhibit `A'.
"Following issuance of the court's memorandum opinion and order, Cavanaugh timely filed a motion for rehearing, citing the recent Michigan Court of Appeals decision in Earl Dubey & Sons, Inc v Macomb Contracting Corp, 97 Mich App 553; 296 NW2d 582 (1980), which held that the act does not apply to public contracts, citing with approval the dissenting opinion in Parker v Klochko Equipment Rental Co, Inc, 590 F2d 649 (CA 6, 1979).
"The issue appropriate for certification to the Michigan Supreme Court pursuant to the provisions of GCR 1963, 797.2 is whether the building contract fund act, MCL 570.151 et seq., applies to public contracts. As indicated in its memorandum opinion and order, the court followed Parker, supra, which expressly held that the act does apply to public contracts. In its opinion, this court held that it was bound to follow and apply Parker. This court has held in abeyance enforcement of its memorandum opinion and order and a decision on Cavanaugh's motion for rehearing pending the outcome of this certification.
"This court finds that the following question is not now controlled by Michigan Supreme Court precedent. *731 Accordingly, it is appropriate that it be certified to the Michigan Supreme Court pursuant to the provisions of GCR 1963, 797.2 for resolution."
II
In National Bank of Detroit v Eames & Brown, Inc, 396 Mich 611; 242 NW2d 412 (1976), we considered the question of whether an unsecured creditor claiming under the building contract fund act, MCL 570.151 et seq.; MSA 26.331 et seq., has priority over a previously perfected security interest in all present and after-acquired contract rights, accounts, general intangibles, and chattel paper. In deciding this question we stated:
"The purpose of the act is to create a trust fund for the benefit of materialmen and others under private construction contracts." (Emphasis supplied.) 396 Mich 622.
Additionally, in Club Holding Co v Flint Citizens Loan & Investment Co, 272 Mich 66; 261 NW 133 (1935), overruled on other grounds by B F Farnell Co v Monahan, 377 Mich 552; 141 NW2d 58 (1966), this Court had occasion to construe 1931 PA 259 and we stated:
"The act in question stands alone, without any reference to another; it is in harmony with the various provisions of the mechanics' lien law, and we cannot presume, in the absence of explicit language, that it was intended to apply to the erection of public buildings or to public works." 272 Mich 72.
Nevertheless, the United States Court of Appeals for the Sixth Circuit held in Parker v Klochko Equipment Rental Co, Inc, 590 F2d 649 (CA 6, 1979), that the act in question applies to *732 public construction contracts. The dissent in Parker, however, relied on our decision in National Bank of Detroit v Eames & Brown, Inc.
The Michigan Court of Appeals recently took note of this situation in Earl Dubey & Sons, Inc v Macomb Contracting Corp, 97 Mich App 553; 296 NW2d 582 (1980), lv den 410 Mich 897 (1981). The Court pointed to our decision in National Bank of Detroit v Eames & Brown, Inc, and to the dissent in Parker, and held that the building contract fund act does not apply to public construction contracts.
III
We reaffirm our rulings in National Bank of Detroit v Eames & Brown, Inc, and in Club Holding Co v Flint Citizens Loan & Investment Co that the act applies only to private construction contracts. It has no applicability to public construction contracts. Indeed we believe that the United States Court of Appeals for the Sixth Circuit in General Ins Co of America v Lamar Corp, 482 F2d 856 (CA 6, 1973), cited with approval in National Bank of Detroit v Eames & Brown, Inc, accurately analyzed the reason for the differentiation:
"The legislative history of the Michigan statute itself is obscure. The briefs of the parties do nothing to illuminate it, and our research has not disclosed the exact circumstances of the statute's enactment. Nevertheless, the date of its passage, 1931, identifies the act as one of a genre of Depression-era measures intended to afford relief to subcontractors and materialmen in the construction industry.
"During the boom period of the 1920's, speculative builders often undertook to construct projects too large for their available capital to finance, and they frequently paid suppliers and materialmen on older projects with funds received as payment on more current *733 operations. With the advent of the crash of 1929 and the consequent widespread insolvency of many building contractors, these pyramided empires also collapsed and many subcontractors and suppliers were never paid. Subcontractors and materialmen on private projects were left only with mechanics' liens as remedies, and these were often ineffective. See generally Grossman, Trust and Penal Provisions of the New York State Mechanics' Lien Law, 5 Brooklyn L Rev 14, 16-22 (1935).
"On the other hand, suppliers of labor and material on public projects were protected by statutorily required payment and performance bonds. These bonds required for public projects were intended `to afford protection to the suppliers of labor or materials, similar to that afforded under the mechanics' lien laws in the case of private buildings or construction.' * * *
"When Depression-era experience demonstrated the inadequacy of mechanics' liens in many cases because the owner had a defense if he had paid the principal contractor, statutes like the Michigan Act of 1931 were enacted to afford a `supplement to the Mechanics' Lien Law', providing a more effective remedy for private project suppliers against their principal contractors than they had previously."
The certified question is answered in the negative.
COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.