**In re WILLIAMS BROTHERS ASPHALT PAVING COMPANY, Debtor.**

**RIETH–RILEY CONSTRUCTION COMPANY, INC., an Indiana Corporation, Plaintiff,**

v.

**FIRST SECURITY BANK, a State Chartered Michigan Corporation, Defendant.**

**Bankruptcy No. NG 82–00386. Adv. No. 84–0618.**

United States Bankruptcy Court, W.D. Michigan.

March 4, 1986.

Brown & Winckler, Howard J. Soifer, Lansing, Mich., for plaintiff.

Miller, Johnson, Snell & Cummiskey, Boyd A. Henderson and Alan C. Schwartz, Grand Rapids, Mich., for defendant.

Dunn, Schouten & Snoap, Thomas W. Schouten, Grand Rapids, Mich., for Trustee.

## TRUST FUNDS—SECURED CREDITORS—BONA FIDE PURCHASER

DAVID E. NIMS, Jr., Bankruptcy Judge.

This matter involves a dispute between Rieth-Riley Construction Company, Plaintiff, and First Security Bank, Defendant, over the relative interest of each party in an escrow account which was ordered to be created by this Court on March 27, 1984. Rieth-Riley claims the interest of a beneficiary under the Michigan Builders Trust Fund Act, and asserts that the escrowed monies are trust monies and not "property of the estate" within the meaning 11 U.S.C. § 541. First Security Bank ("Bank") asserts to the contrary that the escrowed monies are not trust monies. It is the Bank's position that Rieth-Riley is merely an unsecured creditor, and that Rieth-Riley's interest in the escrow account is junior to the perfected security interest of the Bank.

This matter is before the Court on the Bank's motion for summary judgment. The parties have filed a lengthy stipulation of facts and have agreed that this dispute arose as follows:

Williams Brothers Asphalt Paving Company, Debtor, is a Michigan corporation which, up until the time its case was converted from a case under Chapter 11 to a case under Chapter 7 of the Bankruptcy Code, had its principal place of business in

the City of Saranac, Michigan. As evidenced by its name, Williams Brothers was a contractor in the paving and resurfacing business. The Bank is a secured creditor of Williams Brothers, and has a properly perfected security interest in all of Williams Brothers' equipment and accounts receivable.

In October of 1980, Williams Brothers entered into a contract with the City of Ionia, Michigan, for the resurfacing of certain streets in the City of Ionia. Williams Brothers fully performed its obligations under this agreement and, on or about November 30, 1980, the City of Ionia remitted to Williams Brothers a check in the amount of $42,477.44 (Check No. 08381). This check was deposited into Williams Brothers' checking account (# 101–209–7) at the Bank on December 19, 1980. Other deposits were made the same day. The total deposits were in the sum of $81,054.99.[1]

Also in October of 1980, Williams Brothers entered into a resurfacing contract with the Village of Muir, Michigan. Williams Brothers fully performed its obligations under this contract as well, and on or about March 17, 1981, Williams Brothers was paid in full by the Village of Muir.[2]

Rieth-Riley was Williams Brothers' asphalt supplier on both the City of Ionia and Village of Muir projects. On the Ionia project, Rieth-Riley was owed from Williams Brothers a total of $32,970.30. Rieth-Riley has to date received no part of this obligation. On the Muir project, Rieth-Riley was owed a total of $18,520.30, of which $6,000.00 has been paid. That leaves an unpaid balance on the Muir project of $12,520.30. A summation of the two amounts still owing to Rieth-Riley is $45,490.60. However, throughout these and several other proceedings, Rieth-Riley has consistently prayed for only $43,490.60, and that figure (with interest adjustments) will be the figure this Court will regard as in dispute.[3]

The parties agree that all monies received by Williams Brothers from the City of Ionia were impressed with a trust in favor of Rieth-Riley pursuant to the Michigan Builders Trust Fund Act. Mich.Comp. Laws § 570.151 *et seq.* (1931); (Mich.Stat. Ann. § 26.331 *et seq.* (Callaghan 1982))

On December 18, 1980, Williams Brothers wrote three (3) checks to the Bank in the total amount of $122,352.46.[4] One day later Williams Brothers wrote two (2) checks to Bank in the total amount of $43,-

---

**1.** The source of the difference is not indicated by the parties.

**2.** It is unclear from the record exactly how or when this payment took place. A letter from the Attorney for the Village of Muir to Williams Brothers indicates that payment was made on March 17, 1981. However, the amount of the payment is not specified in the letter, and is not specified anywhere else in the stipulation of facts. The stipulation of facts also does not indicate what account of Williams Brothers into which the Village of Muir check was eventually deposited. Paragraph No. 22 of the stipulation of facts indicates that the check from the City of Ionia in the amount of $42,477.44 (# 08381) represented complete payment to Williams Brothers for materials supplied by Rieth-Riley for both of the projects in question. This assertion only confuses the matter because it does not explain why payment for the Village of Muir project was made by the City of Ionia, why the amount of the payment was $42,477.44 rather than the $43,490.60 eventually sought by and awarded to Rieth-Riley, or why further payments were made if the prior payments were "complete."

This confusion can be at least partially resolved with a careful (albeit strained) reading of Paragraph No. 22. When the parties asserted that check # 08381 represented "complete" payment for materials supplied by Rieth-Riley, they could simply have meant that such payment was to be attributed entirely ("completely") to Rieth-Riley's claim. This interpretation would render Rieth-Riley's claim supplemental rather than inconsistent in nature, and an interpretation which reconciles the terms of an agreement is a preferred interpretation. See, generally, 5 Callaghan's Michigan Civil Jurisprudence *Contracts* § 172 (1980). This Court, then, will regard the proper amount of Rieth-Riley's claim against Williams Brothers to be $43,490.60. Any liability which could be predicted on the March 17, 1981, payment will be disregarded.

**3.** See foot note 2 infra.

**4.** Check No. 372 in the amount of $8,467.04; Check No. 373 in the amount of $13,239.55; Check No. 374 in the amount of $100,645.87.

907.84.[5] A check for $5,806.30 was written to the Bank on December 31, 1980, and the Bank withdrew $16,366.84 from Williams Brothers' account on January 2, 1981. In total, then, Williams Brothers remitted to the Bank a total of $188,433.44 during the period from December 18 of 1980 to January 2 of 1981 (about 15 days). The parties do not indicate when or whether any additional deposits were made into Williams Brothers' account during this period, what balances existed on any of the dates the checks were written, or what the balance of Williams Brothers' account was after the January 2, 1981, withdrawal. The parties do agree, however, that all of the monies received by Williams Brothers from the City of Ionia relative to the Ionia and Muir projects, were paid by Williams Brothers to the Bank in satisfaction of pre-existing secured indebtedness. This admission, of course, is tantamount to an admission that Williams Brothers used monies held in trust for Rieth-Riley to satisfy its indebtedness to the Bank.

On August 17, 1981, Rieth-Riley filed an action against Williams Brothers in State Court (Circuit Court for the County of Ionia) seeking to collect the monies it was owed by Williams Brothers. Rieth-Riley moved for summary judgment in November of 1981, and an Order granting Rieth-Riley's motion was entered by the Circuit Court on August 13, 1982.

During the pendency of the State Court action, Williams Brothers entered into an auction contract with Ritchie Bros. Auctioneers, Inc. Williams Brothers had apparently decided to sell much of its equipment and Ritchie Bros. was commissioned to accomplish the task. The Bank was aware of Williams Brothers' intentions and made independent arrangements with Ritchie Bros. to receive the proceeds of the auction sale. The sale was conducted on December 8, 1981, and the proceeds, save for Ritchie Bros.' commissions, were paid to the Bank.

On February 2, 1982, prior to the entry of judgment in Rieth-Riley's favor in State Court, Williams Brothers filed its petition seeking protection under Chapter 11 of the United States Bankruptcy Code. Rieth-Riley moved for relief from the automatic stay pursuant to 11 U.S.C. § 362(d) and on February 19, 1983, this Court granted a conditional lift of stay. The condition was that the State Circuit Court reconsider its ruling of August 13, 1982, in light of *In Re Certified Question*, 411 Mich. 727, 311 N.W.2d 731 (1981), which held that the Builders Trust Fund Statute in Michigan did not apply to public projects. The State Circuit Court's opinion on the motion for reconsideration was to become the law of the case.

On January 12, 1984, the State Court affirmed its prior ruling and again awarded summary judgment in Rieth-Riley's favor. Judgment was in the principal amount of $43,490.60, with $13,300.74 interest. The total amount of the judgment was $56,791.34. The Circuit Court's judgment was predicated on the principle that the Michigan Builders Trust Fund Act applies to unbonded public projects. The projects in issue were not bonded because the contract price did not exceed $50,000.00. See, Mich. Comp.Laws § 129.201 (1963) (Mich.Stat. Ann. § 5.2321 (Callaghan 1982)).

Williams Brothers' case was converted to a case under Chapter 7 of the Bankruptcy Code on June 21, 1982. Following a hearing on Rieth-Riley's objection to the distribution of cash proceeds, this Court entered an order, dated March 27, 1984, requiring the Bank to deposit $56,791.34 in an interest bearing escrow account. This account was to be held by the Bank pending resolution of Rieth-Riley's objection to the final disbursement of the escrowed monies to the Bank.

A pre-trial conference was held on January 24, 1985. It was decided during the pre-trial conference that this case could be resolved on motions for summary judgment. As previously indicated, the motion under consideration was filed by the Bank, and the stipulation of facts was filed short-

---

**5.** Check No. 376 in the amount of $9,722.49;  Check No. 419 in the amount of $34,185.35.

ly thereafter. The parties have consented to this Court's jurisdiction to enter final orders. See, 28 U.S.C. § 157(c)(2).

Since this matter is before the Court on the Bank's motion for summary judgment, the facts, if unsettled, will be viewed in a light most favorable to Rieth-Riley. The motion will be granted only if there remain no genuine issues of material fact. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir.1982).

### I.

The transfer rule in property law provides that a transferor can transfer no greater interest in property than he possesses. E.g., *United States v. Haddix & Sons, Inc.*, 268 F.Supp. 825, 833 (E.D.Mich. 1967); Mich.Comp.Laws § 440.3306, (1962) (Mich.Stat.Ann § 19.3306 (Callaghan 1981)); 20 Michigan Law & Practice, *SALES* § 99. A transferee takes property subject to the same infirmities of title to which the property was subject in the hands of the transferor. Thus, a transferor who holds only legal title in property can pass only legal title, and a trustee, who is a legal title holder, passes only legal title when he passes trust property to a third party without the consent of the trust beneficiary. 22 Michigan Law & Practice, *TRUSTS* § 157 (collected authorities at ft. nt. 40). In this case, the transfer rule would provide that if and when Williams Brothers transferred monies held in trust for Rieth-Riley to the Bank, the Bank took such monies subject to the equitable interest of Rieth-Riley.

The transfer rule, however, does not operate without exceptions. Under the rule commonly known as the bona fide purchaser rule, a transferee takes full title to property in which his transferor had only legal or voidable title, if the transferee takes for value, in good faith, and without notice of the "true owners" interest. *Pinconning State Bank v. Henry*, 258 Mich. 44, 241 N.W. 913 (1932). The bona fide purchaser rule operates to protect a transferee who receives property fraudulently transferred to him by his transferor. Thus, when a trustee breaches a trust by conveying trust property to a third party without authority from the trust beneficiary, such third party will take the trust property free and clear of the interest of the beneficiary if the third party is not knowingly a party of the illegal or fraudulent transaction and takes without knowledge that the trust has been breached. *Watson v. Wagner*, 202 Mich. 397, 168 N.W. 428 (1918); RESTATEMENT (Second), OF TRUSTS § 284.

If for some reason the transferee does not qualify as a bona fide purchaser, the beneficiary will have an action against him for recovery of the property, but only if he retains possession of it. That is, the beneficiary must trace the property to the transferee. *Selby v. Ford Motor Company*, 590 F.2d 642 (6th Cir.1979); *Gillen v. Wakefield State Bank*, 246 Mich. 158, 169–170, 224 N.W. 761 (1929); *Patek v. Patek*, 166 Mich. 446, 131 N.W. 1101, (1911).

■ In summary, then, an entity or party claiming the status of a trust beneficiary can collect trust property from a transferee of the trustee only if three separate factors are established: the property transferred must in fact be trust property; the transferee must not be a bona fide purchaser for value; and the transferee must still be in possession of the trust property.

The parties have stipulated that in a 15 day period from December 18, 1980, to January 2, 1981, a total of $188,433.44 was distributed to the Bank by Williams Brothers. Almost all of the distributions were made by checks drawn on the Bank and made payable to the Bank's order. A sum of $16,366.89 was apparently set off by the Bank on January 2, 1981. The payment from the City of Ionia to Williams Brothers was deposited at the Bank on December 19, 1980, only one day after this flurry of payments to the Bank by Williams Brothers had begun. The parties admit that the December 19 deposit was impressed with a trust in favor of Rieth-Riley, and they further admit that the deposited monies were paid to the Bank in partial satisfaction of Williams Brothers pre-existing indebtedness. Therefore, the first element of Ri-

eth-Riley's action—that the transferred property be trust property—has been established.

The issue, then, is whether the Bank qualified as a bona fide purchaser. The bona fide purchaser rule, which originated at common law, has been codified in a number of slightly varying formations, each formation intended for application in a particular factual context. Mich.Comp. Laws § 440.2403 (1962) (Mich.Stat.Ann. § 19.2403 (Callaghan)) (sales of goods); Mich.Comp.Laws § 440.3302 (1962) (Mich. Stat.Ann. § 19.3302 (Callaghan 1981)) (instruments—commercial paper); Mich. Comp.Laws § 440.7501 (1962) (Mich.Stat. Ann. § 19.7501 (Callaghan 1981)) (documents of title). Payment to the Bank from Williams Brothers was in the form of checks drawn on the bank and made payable to the Bank's order. When the Bank took possession of the checks from Williams Brothers, it became a "holder" within the meaning of Article Three of the Uniform Commercial Code.[6] Thus, the appropriate good faith purchaser rule for application here is the "holder in due course" rule found in Article Three.

Under Article Three, a holder in due course takes an instrument free from all claims to it on the part of any person. Mich.Comp.Laws § 440.3305(1) (1962), (Mich.Stat.Ann. § 19.3305(1) (Callaghan 1981)). A holder in due course is a holder who takes the instrument for value, in good faith, and without notice of a claim against it by any person. Mich.Comp.Laws § 440.3302(1) (1961) (Mich.Stat.Ann. § 19.-3302(1) (Callaghan 1981)). A payee may be a holder in due course. Mich.Comp. Laws § 440.3302(2) (1962) (Mich.Stat.Ann. § 19.3302(2) (Callaghan 1981)).

The Bank clearly gave value for the checks from Williams Brothers. A holder takes an instrument for value when he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due. Mich.Comp.Laws § 440.3303 (1961) (Mich. Stat.Ann. § 19.3303 (Callaghan 1981)). This rule is intended to supplant the rule which prevailed at common law that payments or property received in satisfaction of pre-existing indebtedness were not received for value.[7] Thus, the fact that the Bank received the payments from Williams Brothers in satisfaction of pre-existing indebtedness will not prevent it from becoming a holder in due course.

The Bank also took without notice and in good faith. The Bank would have had notice had it known that Williams Brothers was making payments out of funds held in trust for Rieth-Riley. See, Mich.Comp.Law § 440.3304(2) (1962) (Mich.Stat.Ann. § 19.-3304(2) (Callaghan 1981)). But there is nothing in the record which would indicate that the Bank had such knowledge, or that such knowledge should be attributed to the Bank. A creditor bank which receives payment from its debtor customers on outstanding loans is not usually under any obligation to make inquiry about the source of the monies being paid. Such a requirement would be commercially unreasonable for a lending institution which receives hundreds of payments daily. Nor would minor irregularities in the manner or amount of payment put the Bank on any kind of notice. There is nothing special about minor irregularities in payments which would reasonably raise the suspicion of a lending institution about the propriety of its customer's title to instruments being tendered in payment of outstanding loans. In this case, several payments were made to the Bank in a relatively short period of time. The parties do not indicate the reason for making so many payments at once, but presumably Williams Brothers was in arrears on its commercial loans and was trying to cure the arrearages. Rieth-Riley's complaint does not assign any bad faith or notice to the Bank in this regard,

---

6. Mich.Comp.Laws § 440.1201(20) (1962) (Mich.Stat.Ann. § 19.1201(20) (Callaghan 1982)).

7. For the common law rule, see, *Automobile Equipment Co. v. Motor Bankers Corporation,* 251 Mich. 220, 251 N.W. 559 (1930); *Edson v. Hudson,* 83 Mich. 450, 47 N.W. 347 (1890).

and the Court does not find bad faith on the record it has been provided.[8] Therefore, the Bank qualified as a holder in due course and is not subject to the claim of Rieth-Riley.

Having affirmed the Bank's status as a holder in due course, the Court need not reach the tracing issue. The parties have stipulated that *all* of the monies received by Williams Brothers from the City of Ionia were paid to the Bank in December of 1980. Therefore, all of the monies that could have been traced to the Bank are protected from Rieth-Riley's claim by the Bank's holder in due course status.

■ Rieth-Riley alleges that the funds generated by the auction sale in 1981 were impressed with a trust in its favor. This allegation is in error. The Michigan Builders Trust Fund Act only applies to "the building contract fund paid by any person to a contractor ..." Mich.Comp.Laws § 570.151 (1931) (Mich.Stat.Ann. § 26.331 (Callaghan 1982)). The Act only covers funds paid for building construction purposes. See, *Reiter v. Kuhlman*, 59 Mich. App. 54, 228 N.W.2d 830 (1975). The Act does not cover proceeds from the sale of the general contractor's equipment.

■ The Bank has argued that because the Builders Trust Fund Act by its terms imposes the obligation of trustee only on contractors or subcontractors who receive trust fund payments, that such funds never retain their trust character when paid out to third persons. The Court, however, finds no support in existing law for this proposition. Indeed, there is controlling law to the contrary. See, *National Bank of Detroit v. Eames & Brown, Inc.*, 396 Mich. 611, 619, 242 N.W.2d 412 (1976).

**8.** The Court recognizes that good faith is essentially a question of fact. *Schranz v. I.L. Grossman, Inc.*, 90 Ill.App.3d 507, 45 Ill.Dec. 654, 412 N.E.2d 1378 (1980). The Court also recognizes that the burden of proving good faith rests with the party asserting it. *Whitaker Iron Co. v. Preston National Bank*, 101 Mich. 146, 59 N.W. 395 (1894). It has been held, however, that in the absence of any allegations to the contrary, a holder of a properly drawn negotiable instrument will be presumed to be a holder in due course. See, e.g., *Jonwilco, Inc. v. C.I.T. Finan-*

Motion for summary judgment granted and judgment for Defendant will be entered. No costs are allowed.

*cial Services, Inc.*, 662 S.W.2d 664, 38 U.C.C.Rep. 216 (1983); *Williams v. Stansbury*, 649 S.W.2d 293, 36 U.C.C.Rep. 879 (1983). Application of this holding in case at bar is warranted for the reasons that the Bank has not been accused of bad faith, and bad faith is not apparent in any form from the record. Given the lengthy stipulation of the facts filed in this case, the Court would hold that there is no genuine issue of fact concerning the Bank's good faith dealing with Williams Brothers, at least so far as the December 19, 1981, payment is concerned.